## RIESKE v. HOOVER et al.

No. 3249.   Decided Dec. 13, 1918.   (177 Pac. 228.)

1. APPEAL AND ERROR—SCOPE OF REVIEW—FACT FINDINGS. Assuming, without deciding, that ejectment is an equitable remedy, unless the findings of the court are against the clear preponderance of the evidence, its judgment cannot be reversed.   (Page 92.)

2. APPEAL AND ERROR—SCOPE OF REVIEW—FACT FINDINGS. Assuming, without deciding, that ejectment is a remedy at law, if there is any substantial evidence to support the findings, whether by a court or a jury, the court on appeal is powerless to interfere. (Page 92.)

3. EJECTMENT—EVIDENCE—SUFFICIENCY. In ejectment, evidence held such that the court could not hold that the findings were against the clear preponderance of the evidence.   (Page 93.)

4. ADVERSE POSSESSION—REQUISITES—INTENTION TO CLAIM. Where the intention is to claim only up to the true line, the necessary element of intent to claim adversely is absent, and, if adjoining owners each intend to claim to the true line, each must conform to that line, whenever it is ascertained.   (Page 93.)

5. APPEAL AND ERROR—ASSIGNMENTS OF ERRORS—SUFFICIENCY. Rule 26 (33 Utah, xiii, 97 Pac. x), requiring that an assignment that the

evidence is insufficient to sustain the findings specify the particulars wherein the evidence is insufficient, is imperative.[1]    (Page 94.)

6. APPEAL AND ERROR—ASSIGNMENTS OF ERRORS—SUFFICIENCY. Although, if there is no evidence whatever to sustain the findings, rule 26 (33 Utah, xiii, 97 Pac. x), requiring specification of particulars in which evidence is insufficient, need not be complied with, the appellant should not allege that there is no evidence to sustain the findings, when there is abundant evidence, admitted without objection, in order to avoid compliance with the rule.    (Page 94.)

Appeal from the District Court of Utah County, Fourth District; *Hon. A. B. Morgan,* Judge.

Ejectment by Samuel Rieske against John W. Hoover and others.

Judgment for plaintiff.    Defendants appeal.

AFFIRMED.

*Parker & Robinson* for appellants.

*Evans, Folland & Evans* for respondent.

THURMAN, J.

Action in ejectment to recover possession of real property and for damages.

The plaintiff, in substance, alleges: That plaintiff is the owner of that certain parcel of land, to-wit, "Beginning at the northwest corner of the northeast ¼ of the southwest ¼ of section 7, township 5 south, range 4 east, Salt Lake base and meridian; thence south 0 degrees 15 minutes east, 1332.2 feet to the southwest corner of said northeast ¼ southwest ¼ of section 7; thence east 116.4 feet; thence north 4 degrees 46 minutes east, 1160 feet; thence north 51 degrees 3 minutes west, 280.8 feet, to the place of beginning, containing 4.872 acres;" that the defendants are in possession without any

---

[1] *Holt* v. *Great Eastern Casualty Co.,* 53 Utah, 543, 173 Pac. 1168.

right or title, and against plaintiff's will or consent, and that they withhold such possession from plaintiff wrongfully and unlawfully, to plaintiff's damage.    There are other allegations in the complaint, but in view of the judgment they are immaterial.

Defendants, answering, deny the allegations of the complaint above referred to, and affirmatively allege that their predecessors in interest in 1895 conveyed to defendant John W. Hoover the following described parcel of land, to-wit: Lots 3 and 4, and the southeast ¼ of the southwest ¼ of section 7, and lot 1 of section 18, in township 5 south, range 4 east of the Salt Lake meridian, containing ·158.36 acres; that at the time of the conveyance of said land it was inclosed by a good and substantial fence, which had been erected in 1881 and 1882, and that the land described in plaintiff's complaint is within said inclosure, and is immediately west of the fence which divides plaintiff's and defendants' land; that said fence has been the boundary line between plaintiff's and defendants' lands for thirty-five years, and as such has never been questioned, but has been acquiesced in and relied on by all parties as the true boundary line; that during all of said time defendants have maintained a good and substantial ·fence.    Defendants also plead adverse possession of the land in question for more than twenty years prior to the commencement of the action.

The case was tried to the court without a jury.    The court found all the issues, except a slight variation in the description of the land, in favor of plaintiff, and rendered judgment accordingly.    Defendants appeal, and challenge the validity of findings 1, 2, 5, 6, and 7, on the ground that there is no evidence in the record to support said findings, or either of them.

The findings challenged are as follows:

(1) "That the plaintiff is the owner in fee and entitled to the possession of the following described tract of land situate in Wasatch County, state of Utah, to-wit: Beginning 2.39½ chs. south 0 degrees 15 min. east from the northwest corner of the northeast quarter of the southwest quarter of section seven (7), township five (5) south, range four (4)

east of the Salt Lake base and meridian; thence south 0 degrees 15 min. east, 17.20 chains, to forty line; thence north 89 degrees 40 min. east, along forty line, 2.12 chains; thence north 4 degrees 45 min. east, 14.52 chains; thence north 51 degrees 11 min. west, 4.35 chs., to the place of beginning—area 4.439 acres.''

(2) ''That said defendants are in possession of said tract of land without any right or title thereto, and against the will and without the consent of the plaintiff, and said defendants have wrongfully and unlawfully withheld the possession of said premises from the plaintiff.''

(5) ''That about the year 1881 or 1882 a fence was constructed by the predecessors in interest of the plaintiff and defendants for their convenience, and it was then understood and agreed by them that said fence was not located on the boundary line, but would be moved and located on the boundary line at any time, upon the survey of the land being made and the true boundary line established; that ever since the construction of said fence it has remained where it was originally constructed, with the full understanding by the plaintiff and defendants, and their predecessors in interest, that said fence was not on the boundary line, and would be moved to the boundary line whenever the said line was established; that pursuant to said understanding, and not otherwise, the defendants and their predecessors in interest have occupied the land described in paragraph 1 ever since the construction of said fence.''

(6) ''That the defendants' possession of the land belonging to the plaintiff and inclosed by the fence in question was a permissible possession only, and in no sense did said defendants or any of them ever hold adverse possession of said land or any part thereof against the plaintiff, nor any of the plaintiff's predecessors in interest; neither has the plaintiff nor any of his predecessors in interest acquiesced in the defendants' adverse possession or occupancy or use of the land described in paragraph 1, above.''

(7) ''The court finds all the issues in favor of the plaintiff and against the defendants and each of them.''

The single question presented by this appeal is: Does the evidence sustain the findings above referred to?

The fact is not disputed that the record title to the land in question is in the plaintiff, and that defendants own the land adjacent to plaintiff's on the west. Defendants rely entirely upon the fence and its maintenance as a true boundary line between them and plaintiff, the acquiescence of all parties therein, and adverse possession of the land in controversy for more than twenty years. The testimony relating to these points is brief, and the number of witnesses comparatively few.

W. D. Wright, a witness for plaintiff and predecessor in interest of the defendants, testified in effect that he, more than twenty-three years before the trial, owned the land now owned by defendants; that his brother William owned the land adjoining on the east, now owned by the plaintiff; that he (W. D.) built the fence in question with the knowledge and consent of William, and with the understanding that the fence could be changed at any time that William desired. He also testified, in effect, that when he sold the land to defendant J. W. Hoover, about twenty-three years before the trial, he told Hoover of his understanding with William concerning the fence and the land, and that he knew the land was William's when he inclosed it with the fence. The entire effect of the testimony of this witness was that the fence was not intended as a permanent boundary line fence.

Mrs. Emma Wright, widow of William and his successor in interest to the land now owned by plaintiff, testified, in substance, that while she owned the land defendants never claimed any interest in the land in dispute.

J. H. McEwan, successor in interest of Emma Wright to the land now owned by plaintiff, testified that during the time he owned the land there were several conversations between him and defendant John W. Hoover, successor in interest to W. D. Wright, respecting the land in dispute and the fence. The general effect of said conversations was, according to this witness, that the fence was not considered as a permanent boundary line between the parties, but was only temporary,

and might be moved at any time when the true line was ascertained by survey.

. Samuel Rieske, plaintiff, as a witness in his own behalf, testified to conversations with defendant John W. Hoover respecting the fence and land in controversy, the effect of which conversations was that Hoover did not claim the land, and understood that the fence was subject to change at the option of the plaintiff. Plaintiff also testified that Hoover at one time paid him rent for the use of the land, and did not claim title thereto until a year or two before the trial.

Defendant John W. Hoover, as a witness in behalf of defendants, denied the conversations above referred to, and denied that there was any understanding that the fence was not the true boundary line; also denied having paid any rent. to plaintiff for the use of the land.

Ferris Hoover, defendant, as a witness for defendants, denied that any rent was paid plaintiff for the land in question, and also testified to the effect that defendants had cultivated the area in dispute with the knowledge of, and without any objection or claim of right on the part of, the plaintiff.

Ralph Hoover, another defendant, testified, in effect, that he was a son-in-law of W. D. Wright, who had testified for plaintiff; that on one occasion W. D. Wright, in answer to a question as to where the boundary line was, said he did not know exactly, but that at the time they put the fence there he and his brother agreed where the fence was was near enough to the line, and neither of them would have any more to say about it.

The foregoing, in substance, is all the testimony in the case relating to the main issue, except that it also appears that John W. Hoover commenced the cultivation of the land in question about fifteen years before the trial; that from that time down to 1914 he cultivated about 1½ acres, and in that year increased the area of cultivation.

Unless the findings of the court are against the clear preponderance of the evidence, we have no power to reverse the judgment. That is the rule, even if it be admitted that this is an equity case, which we do not deem it   1, 2 necessary to determine. If it is a case at law, as cases

in ejectment usually are, unless an equitable defense is interposed, then the rule is less liberal. In such cases, if there is any substantial evidence to support the findings, whether by a court or a jury, we are powerless to interfere. These rules are so well established in this jurisdiction as to become a matter of common knowledge among the members of the bar and courts of the state.

Under either rule above referred to we are of the opinion that neither of the exceptions relied on by appellants should prevail. Applying the rule most favorable to appellants, we are not prepared to hold that the findings are against a clear preponderance of the evidence. This is manifest upon a mere casual reading of the testimony, the substance and effect of which we have endeavored to correctly state. It is not necessary to comment on the evidence. It speaks for itself. It is to some extent conflicting upon the main issue. It therefore became the duty of the trial court to reconcile the conflict, if possible, and determine the facts. The findings of the trial court being unimpeachable under the errors assigned, the duty of this court is plain and unequivocal, unless the law is contrary to our conception.

The law applicable to the facts of this case, both as to title by adverse possession and by acquiescence for a period of years, is accurately and succinctly stated in 4 R. C. L. section 71, title "Boundaries," at page 130, as follows:

"Under the general principles of the law of adverse possession, it is essential, in order that possession may be considered as being adverse, that there should be an intention to claim title. Where the intention is to claim only up to the true line, wherever it may be, the necessary element of an intent to claim adversely is absent. Accordingly, where lands are divided by a fence which their owners suppose to be the true line, each claiming only to the true line, wherever that may be, they are not bound by the supposed line, and must conform to the true line when it is ascertained."

See, also, in the same section:

"Apart from the question of adverse possession, the erection of a fence may be evidence of the location of a boundary line which it was intended to make, and acquiescence in it for a reasonable length of

time may become binding upon the adjacent landowners. Yet a fence may be maintained between adjoining proprietors for the sake of convenience merely, and without intention of thereby fixing boundaries, and therefore will not be given that effect.''

The exact position of appellants' counsel as 'to the law governing the case is not made clear by their brief. They, however, insist that the facts of the case bring it within the doctrine enunciated by this court in the following cases: *Holmes* v. *Judge,* 31 Utah, 269, 87 Pac. 1009; *Moyer* v. *Langton,* 37 Utah, 9, 106 Pac. 509; *Rydalch* v. *Anderson,* 37 Utah, 99, 107 Pac. 25; *Young* v. *Hyland,* 37 Utah, 229, 108 Pac. 1124; *Binford* v. *Eccles,* 41 Utah, 453, 126 Pac. 333; *Christensen* v. *Bentler,* 42 Utah, 392, 131 Pac. 666; *Tanner* v. *Stratton,* 44 Utah, 253, 139 Pac. 940.

· As counsel for appellants did not attempt to specifically apply the doctrine of any of those cases to the concrete facts of the present case, and as we are unable from our examination to make the application, we feel compelled to hold that none of the cases referred to sustain appellants' position.

Before concluding our remarks, in view of the positive and clear import of the evidence from which the trial court found the facts in this case, we feel it our duty to make a few observations relative to a matter of practice.

In their assignments of error appellants' counsel, in every instance, assert that there is no evidence to support the findings. Such an assertion, in view of the record, in our judgment, is unfair to the trial court. It is equally unfair to the respondent, and fails to enlighten this court as    5, 6 to the real grounds of appellants' contention. When appellants declare there is no evidence to support any of the findings objected to by them, and upon an examination of the record we find ample evidence of a very satisfactory nature, we are at a loss to know just what appellants' counsel mean by declaring there is no evidence at all. Where an appellant assigns insufficiency of the evidence to sustain the findings, an imperative rule of this court requires him to specify the particulars in which the evidence is insufficient. See rule 26 of this court (33 Utah, xiii, 97 Pac. x), and also *Holt* v. *Great Eastern Casualty Co.,* 53 Utah, 543, 173 Pac.

1168, and cases cited. When in the judgment of an appellant there is no evidence at all to sustain the findings, a compliance with the rule referred to is, of course, not required; in fact, it is impracticable. But it is little short of a palpable evasion of the requirements of the rule if a party can, in his assignments of error, declare there is no evidence whatever to support the findings, when in fact there is abundant evidence, admitted without objection as to its competency or materiality.

To further emphasize this matter: If a party, under an assignment of error which declares there is no evidence to support a finding, can require this court to examine the evidence for the purpose of determining whether there is any evidence or not, and thereby avoid compliance with the provisions of the rule referred to, it is manifest that the rule can be evaded whenever it suits the whim or convenience of an appellant. For these reasons the form adopted by appellants in this case, in view of the plain, unequivocal character of the evidence, cannot be commended. The high character and good standing of appellants' counsel, however, preclude the idea that they intentionally adopted the form of assignment suggested for any ulterior purpose, or to avoid the provisions of the rule to which we have referred.

Notwithstanding the form of the assignment, which is objectionable as above stated, we have carefully examined the record, with a view of arriving at the truth, and determining what is just between the parties litigant.

We find no error, and for the reasons heretofore stated the judgment of the trial court is affirmed, at appellants' costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.