# WILLIE v. LOCAL REALTY CO. et al.

No. 6950.  Decided December 11, 1946.  (175 P. 2d 718.)

See 11 C. J. S. Boundaries, sec. 84; 8 Am. Jur. 804. Establishment of boundary line by oral agreement or acquiescence, notes, 69 A. L. R. 1430; 113 A. L. R. 421.

*Skeen, Thurman & Worsley,* of Salt Lake City, for appellant.

*Riter, Cowan & Carter,* of Salt Lake City, for defendants.

*Duncan & Duncan,* of Salt Lake City, for respondent.

WOLFE, Justice.

This appeal involves a boundary line dispute.

Willie brought this action against the Local Realty Company and against Mrs. Dillon to quiet title to a strip of land between his property and that owned by the defendants; to enjoin the defendants from using said strip of land and for damages for their past interference with his possession of said strip. Defendant Dillon counterclaimed to have the title to the propery involved quieted in herself and for damages. The trial court quieted title to the strip in plaintiff Willie, enjoined the defendants from interference with his possession thereof, allowed no damages, and dismissed

defendant Dillon's counterclaim. Defendant Dillon appeals.

The uncontested facts are as follows: Willie is the owner of a house and lot on the east side of 9th East Street between 5th and 6th South Streets in Salt Lake City. The Local Realty Company is the holder of the legal title and Mrs. Dillon the beneficial owner—hereinafter referred to as owner—of an adjoining house and lot to the north.

In 1883 the Willie property was owned and occupied by Christian Willie. The Dillon property was owned by Charles Kropf. Christian Willie and Kropf built their houses so that one wall was used as the partition wall between the two houses. After these two houses were built, Christian Willie and Kropf entered into the following agreement on July 15, 1883:

"Agreement between Christian Willie and Charles Kropf, both of Salt Lake City: Know all men by these presents: that we, the undersigned, mutually agree this day not to tear down, remove or injure in any way the partition wall *which stands upon our division lines of the respective portions* of Lot 4, Block 28, Plat 'B', Salt Lake City survey, owned by us, and we do hereby severally bind ourselves to each other in the sum of $500.00 that we will not interfere in any wise with said wall without the consent of the other party. [Italics added]

"Dated Salt Lake City, July 5, 1883.

"(Signed) Christian Willie
"Charles Kropf"

In 1922 a successor in interest to Kropf and a predecessor in interest to Mrs. Dillon tore down and removed the house on the Dillon property and built a new one away from the Willie house.

The present condition of the properties is as illustrated by the following sketch:

Line X-Y represents the dividing line between the two properties according to the conveyances to both parties and as determined by a survey made by the city engineer the accuracy of which survey is not questioned by either party.

From point O to point P is a cement retaining wall which was built in 1923 by the Dillon predecessor in interest who tore down the old house and built the new one (not shown in sketch) on the Dillon property. The wall is approximately six inches thick. At the west property line the north side of the wall is 2.48 feet north of the survey line. At point P the north side of the wall is 2.25 feet north of the survey line.

The retaining wall continues from P to H where there is a small jog in the Willie house. From H to R is the north side of the Willie house on which side the predecessor in interest to Dillon placed wooden facing boards when he removed the house that was then attached. From R to S is a plastered rock wall. Boards at D and F were placed there by persons interested in the Willie property to keep soil and water from running on to their property from the Dillon lot. There are old fence posts at E and B. There is a tree at C and a grapevine root at A.

The testimony given by plaintiff and his witnesses is in part in conflict with that given by the defendant and her witnesses as to whether or not there were fences ■ dividing the properties, when such fences were constructed and where they were located.

The trial court found as facts that Willie was the owner in fee of the property up to the north face of the cement retaining wall, the north face of the house, and along where the fence east of the house used to be, that is the line S-T which at the east property line is 2.58 feet north of the survey line. It found that for 62 years preceding the action successive fences and walls at the front and rear of the old house and the party wall of the house marked the boundary line between the two lots.

The first question is factual, to wit: Does the evidence support the finding that for 62 years before the commencement of this action fences and party walls separated the properties on the line O-T and that all persons concerned acquiesced in the line marked by those structures?

It will serve no useful purpose to here detail the evidence given for and against the propositions that fences existed and where and when they existed. Suffice it to say that plaintiff and his witnesses testify that since 1886 and until 1940 successive fences divided the lots on the line S-T (in the rear, east of the Willie house) and that in 1886 the then existing board fence had been in place for some time. They testify that from Point P to point O (in the front of and to the west of the house) from 1886 to 1912 there was a board fence dividing the lots. That in 1912 that fence was replaced by a wire fence which in 1923 was replaced by the present cement retaining wall. The party wall between the two houses was in existence in 1883. Plaintiff and most of his witnesses are persons with long and intimate acquaintanceship with the properties. They located the fences by reference to fence posts, the tree and the grapevine root and the northeast corner of the present house. Point T, which is 2.58 feet north of the official survey line, was located from memory of where the end fence post was prior to its removal in 1940 by one of Dillon's predecessors in interest.

The testimony of defendant Dillon and her witnesses goes back only to 1915 and does not refute the major portion of the testimony of plaintiff and his witnesses.

The evidence clearly preponderates in support of the finding that the old party wall of the houses (now the north wall of the Willie house) had existed for 62 years along the line O-T. The evidence as to the walls and fences both in the front and rear of the lots goes back only to 1886, 59 years before this action was started. The evidence would preponderate in support of a finding that for 59 years preceding this action, fences and walls marked the lines O-P (front) and S-T (rear). The difference between the time fixed by the court (62 years) and that clearly supported by the evidence (59 years) is immaterial to this case.

It is equally clear that from at least as far back as 1886 until 1938 when Mrs. Dillon first became interested in the property that none of the occupants or owners of the Dillon

property objected to the structures along the line O-T marking the dividing line between the properties. There is no evidence that any of Dillon's predecessors in interest or that Willie or any of his predecessors in interest knew the location of the boundary line called for by their deeds until Mrs. Dillon in 1943 had the survey made locating the line X-Y as that boundary line.

The second question, one of law, is: Does the fact that the line O-T was marked for at least 59 years and recognized for at least 52 years as the boundary line between the two lots establish it as the dividing line even though the line called for in the deeds is some 2.5 feet south of that line?

Both parties seem to rely on the 1883 party wall agreement quoted earlier in this opinion to support their respective positions. Willie contends the agreement was a recognition of an already existing line established along the party wall at the time the two houses were built. Dillon argues the agreement shows the parties to it knew where the line was and knew the houses overlapped the line and contracted to protect themselves in their use of the party wall and that the agreement merely gave the owner of the Willie lot a license to use the wall as part of his house.

The party wall agreement does not purport to fix the boundary between the lots. The agreement was made in reference to the party wall not to the boundary line. However, the agreement is helpful in that it shows (contrary to Dillon's contention) that the owners of the lots in 1883 apparently did not know the location of the boundary called for by their deeds. The agreement refers to the partition wall as being located "upon our division lines"—as we have seen the wall is some 2.5 feet north of their "division lines" as shown by the survey.

The facts in the early case of *Holmes* v. *Judge,* 31 Utah 269, 87 P. 1009, 1014, decided by this court in 1906, are very similar to those in this case. The court in that case reviewed the authorities in this and other states, concluded that on the subject of disputed boundaries

the authorities are not in harmony and announced the rule for this state to be as follows:

"But in all cases where the boundary is open, and visibly marked by monuments, fences, or buildings, and is knowingly acquiesced in for a long term of years, the law will imply an agreement fixing the boundary as located, and will not permit the parties or their grantees to depart from such line."

It said further:

"While the interests of society require that the title to real estate shall not be transferred from the owner for slight cause, or otherwise than by law, these same interests demand that there shall be stability in boundaries, and that, where parties have for a long term of years acquiesced in a certain line between their own and their neighbor's property, they will not thereafter be permitted to say that what they permitted to appear as being established by and with their consent and agreement was in fact false."

In *Young* v. *Hyland*, 37 Utah 229, 108 P. 1124, *Holmes* v. *Judge*, supra, was cited with approval and was interpreted as holding:

"The doctrine is recognized that, where the owners of adjoining lands occupy their respective premises up to a certain line which they recognized and acquiesced in as their boundary line for a long period of time, they and their grantees will not be permitted to deny that the boundary line thus recognized is the true line of division between their properties."

In *Tripp* v. *Bagley*, 1928, 74 Utah 57, 276 P. 912, 916, 69 A. L. R. 1417, this court after citing a long line of Utah cases, including the two quoted from above, said:

"In these cases the rule is announced and reiterated that, where the owners of adjoining lands occupy their respective premises up to a certain line which they mutually recognize as the boundary line for a long period of time, they and their grantees may not deny that the boundary line thus recognized is the true one. The general rule this repeatedly enunciated has become the settled law in this jurisdiction."

The facts of this case clearly bring it within the rule announced in *Holmes* v. *Judge*, supra, and followed by the court in an unbroken line of cases.

In order to establish a boundary by long acquiescence it is necessary that there be a dispute over the line or uncertainty as to its location. As said in *Tripp* v. *Bagley*, supra:

"According to the rule laid down by the textwriters and practically all of the adjudicated cases where the question is discussed, one of the requisites necessary to the establishment of a boundary line other than the true boundary line between adjoining landowners by oral agreement or acquiescence, in the absence of adverse possession or estoppel, is that the location of the true boundary sought to be thus established is or has been uncertain or in dispute."

In *Tripp* v. *Bagley*, supra, the facts showed that the location of the boundary was known to all concerned and because of that fact the court held the case did not come within the rule announced in *Holmes* v. *Judge*.

Defendant contends that there was no dispute or uncertainty about the division line in this case because the deeds were clear and certain and each lot had the full frontage called for by the deeds and therefore the rule relating to establishment of boundaries by acquiescence does not apply. It is true that the line called for by the deeds could have easily been ascertained by a survey. However, a boundary line may be "uncertain" or "in dispute" even though it is capable of being readily ascertained. The vital question is whether the adjacent owners when they fixed the line or acquiesced in its being fixed were uncertain or in dispute about the location of the actual line.

It is clear that in 1883 the owners of these lots were mistaken or uncertain as to the boundary line. Apparently they thought the line was some 2.5 feet north of where the subsequent survey showed it to be because their party wall agreement refers to the party wall as being on the "division lines." (See italicized portion of the agreement.) The record does not show that the actual location of the line provided for by the deeds was known until the survey was made in 1943. This is a clear case of adjacent owners, not knowing where the line between their properties actually

was, fixing a line and recognizing that line for a long period of time (at least 52 years in this case). The line thus fixed and recognized is binding on all their grantees and successors in interest.

It follows that the retaining wall, the old party wall of the houses (now the north wall of the Willie house) and the line where the fences used to be in the rear of the property mark the boundary line between the Willie and Dillon lots.

The third question: Did the court properly locate the line where the parties intended to place it?

The trial court set the line along the "North face of the cement retaining wall" and along the "North face of the North wall of the" Willie dwelling house and thence east from the northeast corner of the Willie house to a point on the rear property line where the center of the old fences crossed that line. In other words, after deciding that walls and fences marked and established the boundary line the court gave to one of the adjacent owners, Willie, all the land occupied by said boundary structures for part of the length of the line. This was error.

In the case of *Rich* v. *Stephans*, 79 Utah 411, 11 P. 2d 295, this court held that, absent a showing to the contrary, coterminous landowners own the land to the *center* of boundary fences or walls.

The boundary in the case at bar was established and marked by walls and fences. The record shows no reason why one lot owner should be entitled to all the land occupied by those dividing structures. Equity requires that the boundary line be established along the center line of these structures so that each will own half the land occupied by same and have mutual duties to maintain the walls. Both Willie and Dillon have easements in so much of the other's land as is occupied by the dividing walls for the support and occupancy of said structures. If the parties desire it otherwise, they may contract according to their wishes. We will not make a contract for them.

The record shows the width of the cement retaining wall is 6 inches but it does not reveal the width of the north wall

of the Willie house (the old party wall) or of the old fences on the east; therefore, we cannot correct the lower court's decree. The case is remanded to the trial court with instructions to modify its decree so as to establish the boundary line along the center lines of the cement retaining wall, the north wall of the Willie home and the land formerly occupied by the rear fence instead of along the "north faces" of the walls and diagonally through the land formerly occupied by the rear fences. The lower court is to take additional evidence if necessary. No costs allowed.

McDONOUGH, PRATT, and WADE, JJ., concur.

LARSON, Chief Justice (concurring).

I concur. But I call attention to the fact that under the wording of the last two paragraphs of the opinion, the trial court, if he follows the language of the opinion, would run a zizzaggy dividing line. I think that line when defined should be straight even though it departs from the middle of some of the locating objects.