## WILLIE v. LOCAL REALTY CO. et al.

No. 7118.   Decided April 28, 1948.   (193 P. 2d 429.)

See 48 C. J. S., Judges, sec. 94. Disqualification of judge in pending case as subject to revocation or removal, see note, 162 A. L. R. 641. See, also, 30 Am. Jur. 795.

*Riter, Cowan & Carter* and *Skeen, Thurman & Worsley,* all of Salt Lake City, for appellant.

*Duncan & Duncan,* of Salt Lake City, for respondent.

PRATT, Justice.

This case was previously heard and decided by this court, see 110 Utah 523, 175 P. 2d 718, 723. The present controversy arises out of the lower court's efforts to comply with the requirements of our former decree. Appellant also charges the judge of the lower court with being biased and prejudiced against her.

We shall not repeat the facts of the case, as they are set out in the former decision. However, it is appropriate to quote briefly from that decision to show its intent.

In that decision this Supreme Court said:

"It follows that the retaining wall, the old party wall of the houses (now the north wall of the Willie house) and the line where the fences used to be in the rear of the property mark the boundary line between the Willie and Dillon lots.   *   *   *

"The trial court set the line along the 'North face of the cement retaining wall' and along the 'North face of the North wall of the' Willie dwelling house and thence, east from the northeast corner of the Willie house to a point on the rear property line where the center of the old fences crossed that line. In other words, after deciding that walls and fences marked and established the boundary line the court gave to one of the adjacent owners, Willie, all the land occupied by said boundary structures for part of the length of the line. This was error. *   *   *   .

"The boundary in the case at bar was established and marked by walls and fences. The record shows no reason why one lot owner should be entitled to all the land occupied by those dividing structures. Equity requires that the boundary line be established along the center line of these structures so that each will own half the land occupied by same and have mutual duties to maintain the walls. Both Willie and Dillon have easements in so much of the other's land as is occupied by the dividing walls for the support and occupancy of said structures. If the parties desire it otherwise, they may contract according to their wishes."

Founded upon these statements among others this court directed as follows:

"The record shows the width of the cement retaining wall is 6 inches but it does not reveal the width of the north wall of the Willie house (the old party wall) or of the old fences on the east; therefore, we cannot correct the lower court's decree. The case is remanded to the

trial court with instructions to modify its decree so as to establish the boundary line along the center lines of the cement retaining wall, the north wall of the Willie home and the land formerly occupied by the rear fence instead of along the 'north faces' of the walls and diagonally through the land formerly occupied by the rear fences. The lower court is to take additional evidence if necessary. No costs allowed."

When the case was returned to the lower court evidence was taken ostensibly to establish the center lines called for by the decree by metes and bounds rather than to refer to structures or other monuments placed or growing upon the premises. The lower court recognized what was expected by the decree of this court when he said, at the last hearing:

"* * * the error being that I placed the boundary line on the north side of the objects instead of in the center of the monuments. * * * It is now merely a question of where the center of this wall is and some of the other objects running east from the wall back to the east property line."

Pursuant to this last hearing the lower court made the following finding of fact:

"That the boundary between the plaintiff's and the defendant's respective properties is now and for more than 62 years immediately preceding the commencement of this action has been established and maintained along a course as follows:

"Commencing 212.07 feet South along the West line of Block 28, Plat 'B', Salt Lake City Survey from the Northwest corner of said block 28 as aforesaid, and running thence South 89 deg. 35' East 25.3 feet to the Northwest corner of plaintiff's house; thence South 89 deg. 26' East along the center of the wall which is the north wall of plaintiff's house 50.0 feet; thence South 83 deg. 44' East 8.06 feet to the center of a post; thence North 88 deg. 42' East 11 feet to a point on a tree; thence North 74 deg. 37' East 2.07 feet through the tree to another point on said tree; thence North 88 deg. 20' East 12 feet to a fence post; thence North 89 deg. 33' East 19.00 feet to a grapevine root; thence South 89 deg. 56' East 23.37 feet to a point where said line intersects with the East boundary of plaintiff's and defendants' lands."

His decree covering this description, instead of referring to the center line of the north wall of the Willie house, says:

"* * * thence along the north wall of the dwelling house. * * *"

His findings of fact are introduced with a paragraph containing this:

"* * * and said Supreme Court having remanded the case to this court with instructions to modify its decree so as to establish the boundary line along the center line of the cement retaining wall, the north wall of the Willie home, and the land formerly occupied by the rear fence."

We are of the opinion that the record is clear that the trial judge intended the dividing line to be through the center of the specified objects, such as the retaining wall to the northwest corner of the house, the north wall of the house, and the objects in the rear which outlined the old fence line. There is, however, some confusion in the record as to whether or not the line described by metes and bounds actually passes through the center of the north wall of the Willie house; and concededly it does not pass through the center of the objects in the rear designated fence post, root, and tree. It passes south of the post and root, and north of the tree. Where it passes south of these objects it is to appellant's advantage; where it passes north, to her disadvantage. Now what about the wall of the house?

The engineer who was called to establish the line testified as follows:

"Q. And your line goes around, as you put it here, the present face of the north wall of the house from the extreme west to the extreme east of the house, does it not? A. Except for one portion of the easterly edge of the wall where it has been plastered over and the wall is bowed out quite considerable and at that point the line continues on a tangent and is inside of the north face of the wall.

"Q. How far inside of the north face? A. Oh, I would say that the wall is bowed out there two or three inches.

"Q. Did you make any measurement of it? A. I made some measurements of it. I didn't show it on this map and calculate it. I don't have my notes.

"Q. And it is bowed out from the line of survey which you took is that what you mean? A. Yes, it is bowed out to the north of that line.

"Q. But your measurement and your line is all made on a basis of the north face of the wall of the house all through there, isn't it? A. Yes, it is. It shows on the map that that wall bows out there. That is from the jog that shows on the easterly side of the house, where that wall has been plastered over two or three times and bowed out."

There is some discrepancy in the statements in the record as to the description of that north wall line. In one place it speaks of "North 89° 26′ east 50 feet." In drawing it into the map it is referred to as "S 89° 26′ E 50′." The decree uses "North" the finding of fact (quoted) uses "south." After the parties had rested, the court and counsel for respondent discussed the line as to the house wall as follows:

"The Court: And you may likewise prepare a decree providing that the boundary line will run down the points 'M' to 'N' on the theory that the wall is six inches wide. I think that should be tied in, however, to either the survey line or the line that Mr. Nichols has given you.

\* \* \* \* \*

"The Court: Well, according to the Supreme Court each one of these parties has an easement for the support of the wall on the other property, but the line shall run down the center of the wall. The center of the wall is the wall that now exists there, namely, the wall that is on Mr. Willie's house, and that is from point 'M' to 'N' I believe on your exhibit 'A.'

"Mr. Duncan: And that would be six inches wide, which would be three inches.

"The Court: Yes. I think Mr. McNichols testified he had drawn that three inches from the north face."

The lower court's reference to three inches from the north face apparently refers to a discussion about part of the retaining wall; and as a result, when counsel prepared findings of fact with decree, he left the description as it was and merely inserted the words indicating that the line described was the center line of the north wall of the Willie home. This we believe is not supported by the record. That north wall has now been found to be six inches wide. Thus, if the presently described line is along the north wall instead of its center, it should be some three inches south of where it is described. To move this line, however, will necessitate

a re-establishment of the line east of the north wall, to conform to new angles.

We are of the opinion that the record does not support a conclusion that the line as drawn conforms to the requirements of the decree of this court. For that reason, the findings and decree of the lower court are set aside and the case is remanded for correcting of the errors indicated. A resurvey, if desired, may be made, under the direction of the lower court, using six inches as the width of the north house wall for the purpose of calculating a line three inches south thereof as the center line of that wall. A recheck of compass directions should be made to correct obvious errors there.

Now as to the other point raised by appellant—that of bias and prejudice of the judge who tried the case at both hearings:

Subsequent to our first decision, the appellant filed an affidavit of bias and prejudice against the trial judge who heard the matter both times and moved for a change of judge. Her motion was denied. The grounds of that affidavit are:

"Mary Workman Dillon, being first duly sworn, says: That she is one of the defendants named, that the foregoing action is called for trial to be heard before Judge Ray Van Cott, Jr., that by reason of the bias and prejudice of the Judge developed in said matter and expressed prejudice toward such litigations, she verily believes she cannot have a fair and impartial trial and respectfully requests that the further trial of the said matter and all proceedings in the above entitled court, be had before another judge of this Court."

Appellant asked permission to make a statement in the matter. She stated her case as follows:

"Q. You're the defendant, Mary Workman Dillon, in this case? A. I am.

"Q. And you, Mrs. Dillon, have filed here an affidavit for change of judge for the trial of the issues now to be tried and you have requested me to ask him that you be permitted to make a statement for the record in support of your affidavit? A. I have.

"Q. You may make your statement. A. Well, I feel that it would be, from past experience, that it would be impossible for Judge Van

Cott to give me an unbiased decision or to give me a fair decision in this matter because he said to me once no matter what evidence I brought he wouldn't establish a line that would take in part of their house. Now, I would like to have a judge that would give me a line in support of my deed.

"Q. That is your statement? A. That is my statement.

"By the Court:

"Q. Mrs. Dillon, if I did make such a statement to you it was pursuant to you coming here to my court room after the case was tried, was it not? A. Well, it was a chance meeting and I spoke to you, yes.

"Q. That is, you came here to this court room after the trial of this case before it was appealed to the Supreme Court, did you not? A. Yes; that is, I just chanced to see you here and I stopped and talked to you.

"Q. And it was on that occasion that you say I made the statement that you have indicated? A. Yes; because I told you how impossible it was for them to take a part of my driveway; that it was my driveway; it inconvenienced me so very much and was of no use to them whatsoever."

### The judge ruled as follows:

"I might state in this case that in my opinion I am not prejudiced in the matter. I had never seen Mrs. Dillon in my life prior to the time that the case came in here to be tried, nor do I know or have I been acquainted with any of the other parties, Mr. Willie and his wife. I am of the opinion that Mrs. Dillon's main objection to me is that I decided the matter adverse to her upon the trial.

"Of course, the case has been appealed and the Supreme Court has not reversed me in the sense that they will give to her what she was seeking in the original action, the error being that I placed the boundary line on the north side of the objects instead of in the center of the monuments, and of course, I couldn't change that now, and neither could any other judge. It is now merely a question of where the center of this wall is, and some of the other objects running east from the wall back to the east property line. I fail to see how any matter of prejudice could affect that situation in the least, and I might state that I am not prejudiced toward her.   *   *   *"

As recently decided by this court in *Haslam* v. *Morrison*, 113 Utah 14, 190 P. 2d 520, the mere filing of an affidavit of bias and prejudice does not disqualify a judge. Such a charge is a matter that he has the duty to pass upon.

His finding to the contrary is not arbitrary or capricious simply because such a charge has been made against him. However, in view of the fact that the matter of bias and prejudice has been covered rather thoroughly in that case, we shall merely refer to it for a detailed discussion of the subject matter.

There is some evidence in this case that the size of the controversy did appeal to the judge in an unfavorable light, but we do not think it evidenced any particular hostility toward the appellant. In fact, the judge indicated that he recognized the right of the litigants to settle their difficulties through the courts, be they ever so small.

We see no error in the denial of appellant's motion for change of judge.

The case is remanded for reconsideration as indicated above. Costs to the appellant.

McDONOUGH, C. J., and WADE, J., concur.

WOLFE and LATIMER, JJ., having disqualified themselves, do not participate herein.