265 P.2d 410

HUMMEL et al. v. YOUNG et al.

No. 7849.

Supreme Court of Utah.

Dec. 24, 1953.

238

Peter M. Lowe, Asst. Atty. Gen., for appellants.

George S. Ballif, Provo, for respondents.

WOLFE, Chief Justice.

This case involves a boundary dispute between the appellants and respondents who are adjoining owners of land abutting the west side of U. S. Highway 91 in Provo, Utah. Appellants' lot lies to the north of respondents' lot and is bounded on the north by Ninth South Street. Respondents' lot is bounded on the north by appellants' lot and on the south by a lot owned by June Peterson. All three lots originally comprised a three-acre tract which was acquired by A. H. Levitre and Lydia Levitre, his wife, in 1922. On May 6, 1924, the Levitres conveyed the lot now owned by the appellants to one Clavel and Perskowski, who conveyed to appellants on June 9, 1925. On May 8, 1924, Mr. Levitre conveyed to his wife all his interest in the remainder of the property comprising the lots now owned by respondents, and June Peterson. Respondents acquired title to their lot in 1945 by mesne conveyances from Mrs. Levitre.

In the spring of 1928, a wire fence was constructed between appellants' lot and the lot now owned by the respondents. Mrs. Levitre was then the owner of the latter tract. The fence was built to keep horses owned by one Chris Peterson, who lived on the lot now owned by June Peterson, out of appellants' garden. Chris Peterson supplied the poles and wire and William Young, one of the appellants, built the fence along a line which had several years prior thereto been pointed out to him by Mr. Levitre as being the boundary. The respondents' north line as described in their deed actually coincides with the description of the appellants' south line contained in their deed. Not until 1950 when the respondents caused a survey to be made of their property, was it discovered that the fence encroached from six to eleven feet on the respondents' lot. The trial court quieted title to the strip of land in dispute in the respondents.

In the deed by which the Levitres acquired title to the three-acre tract in 1922, the property was described as being bounded on the east and on the north by the "street line." However, in the deed from the Levitres to Clavel and Perskowski, appellants' predecessors in title, and in the deed from Clavel and Perskowski to the appellants, no mention is made in the descriptions of the "street lines." The lot is described simply by courses and distances.

without any reference to "street lines." The effect of the descriptions is to establish the northern boundary of the lot on a line which is six feet out in Ninth South Street which bounds the property on the north. Appellants contend that the deeds should not be so construed because they claim the Levitres owned no property in the street and hence they should not be held to have intended to convey property out in the street which they did not own.

There is no merit in this contention. Sec. 27–1–7, Utah Code Annotated 1953, provides in part: "* * * A transfer of land bounded by a highway passes the title of the person whose estate is transferred to the middle of the highway." In the case of Brown v. Oregon Short Line R. Co., 36 Utah 257, 102 P. 740, 24 L.R.A., N.S., 86 we pointed out that that statute was declaratory of the common law. At the common law a private conveyance of land bounded by or abutting on a highway, the fee to which belongs to the abutting owners, is presumed to convey the fee to the highway to the center line thereof. See the annotations at 2 A.L.R. 6, 47 A.L.R. 1276, and 123 A.L.R. 542. The presumption is rebutted only by clear evidence that the grantor did not intend to convey his interest lying in the highway. In the instant case the calls in the deed by which the Levitres acquired title are to the "street line." Whether the "street line" was intended by the parties to that deed to be the center line of the highway or the side line of the highway we do not know. Under Sec. 27–1–7 it will be presumed to be the center line. Thus the Levitres owned to the center of Ninth South Street and they did not convey property which they did not own when they conveyed a six-foot strip of property out in that street to the appellants.

Appellants seek to prevent removal of the fence between their lot and the respondents' lot, even though it does not conform to the line described in their deeds, on the ground that it was established as a boundary by an express parol agreement between the appellants and the respondents predecessor in title. It was pointed out by this court in Brown v. Milliner, Utah, 232 P.2d 202, that it has long been recognized in this state that when the location of the true boundary line between two adjoining tracts of land is unknown, uncertain or in dispute, the owners thereof may, by parol agreement, establish the boundary line and thereby irrevocably bind themselves and their grantees. Such express parol agreements were upheld in Rydalch v. Anderson, 37 Utah 99, 107 P. 25, and in Ekberg v. Bates, Utah, 239 P.2d 205.

We further pointed out in Brown v. Milliner, supra, that in the absence of evidence that the owners of adjoining property or their predecessors in interest ever made an express parol agreement as to the location of the boundary between them if they have occupied their respective premises up to an open boundary line visibly

marked by monuments, fences or buildings for a long period of time and mutually recognized it as the dividing line between them, the law will *imply* an agreement fixing the boundary as located, if it can do so consistently with the facts appearing, and will not permit the parties nor their grantees to depart from such line. This rule is sometimes referred to as the doctrine of boundary by acquiescence. The rule was recognized and applied in Holmes v. Judge, 31 Utah 269, 87 P. 1009, and in a long line of subsequent cases—all cited in Brown v. Milliner, supra.

In the instant case, there is no evidence that the fence was built pursuant to an express parol agreement between adjoining owners. On the contrary; the evidence establishes that the fence was built in 1928 by Mr. Young, one of the appellants, when the lot now owned by the respondents was owned by Mrs. Levitre. Young testified that the Levitres did not live on the property at that time and that he did not consult them before building the fence, but that he built it on a line which had been marked by Mr. Levitre several years prior thereto as being the boundary. There is no evidence of Mr. Levitre's authority to act for his wife in establishing the boundary. Clearly, the evidence fails to establish that an express parol agreement between adjoining land owners was ever made.

Having concluded then that the evidence fails to establish that the fence in question was built pursuant to an express parol agreement between adjoining owners fixing the boundary, the question arises whether we can *imply* that such an agreement was made as we did in Holmes v. Judge, supra, and in the cases following the Holmes case which are cited in Brown v. Milliner, supra, at page 207 of 232 P.2d. We think not. In all of those cases such an agreement could be implied without doing violence to the evidence appearing. In view of the state of the evidence this court could and did imply that a boundary agreement had been made between the adjoining owners at sometime during the past. As explained by this court in Glenn v. Whitney, 116 Utah 267, 209 P.2d 257, the court in such cases indulges in the fiction that at some time in the past the adjoining owners were in dispute or uncertain as to the location of the true boundary and that they settled their differences by agreeing upon the fence or other monument as the dividing line between their properties.

In the instant case, there is no room, in view of the evidence appearing, to imply that the fence was built pursuant to agreement between the adjoining owners. Mr. Young testified that he built the fence himself in 1928 without consulting the adjoining owner, Mrs. Levitre, and that she did not live on her lot at that time. Thus it would do violence to the evidence to imply an agreement here. In this respect this case is similar to Home Owners' Loan Corp. v. Dudley, 105 Utah 208, 141 P.2d 160; Peterson v. Johnson, 84 Utah 89, 34

P.2d 697; Glenn v. Whitney, supra; and Brown v. Milliner, supra. In the last cited case, the defendant testified that he built the fence which he relied upon as the boundary without ever discussing the matter with the adjoining owner who at that time was the plaintiff's father. We held that in view of that testimony, there was no room to imply that the fence had been built pursuant to an agreement between the adjoining owners fixing the boundary between them.

The judgment below is affirmed. Costs to the respondents.

McDONOUGH, J., concurs.

WADE, Justice (concurring in the result).

I agree that this fence was not established by acquiescence as the boundary line because there is no evidence that the defendants or their predecessors acquiesced in it as such. Such acquiescence requires assent or consent by the owners of adjoining tracts of land that a known line which is clearly marked by a fence or other monuments is the boundary line between such adjoining tracts by silently treating it as such and failure to make any protest.[1] It does not require an express agreement to that effect. Here, except for the last four or five years prior to the commencement of this action, there is no evidence that the defendants or their predecessors either lived on their property, knew of the fence line, occupied their land only up to the fence line or in any manner indicated by silence or otherwise that they assented or consented to the fence line as the boundary. Thus the evidence failed to show acquiescence and the court correctly found that issue in plaintiff's favor.

However, I do not agree that a showing of a boundary line by acquiescence can be defeated merely by evidence which negatives the existence of an express agreement to that effect. Much is said in the cases about an agreed boundary line, but I think that acquiescence alone is sufficient in a proper case if it exists for the required period of time to establish a boundary line and that it is immaterial whether or not there is an express agreement. In other words as stated in the prevailing opinion "the court indulges a fiction"[2] from proof

---

1. See Bouvier's Law Dictionary, Rawle's Third Revision, Acquiescence; 1 Words and Phrases, Acquiesce; Acquiescence, pages 631 to 639; Chicago & A. R. Co. v. Myers, 86 Ill.App. 401; Pierce's Adm'r v. Pierce, 66 Vt. 369, 29 A. 364, 366; Thompson v. Simmons, 143 Ga. 95, 84 S.E. 370; Griffin v. Brown, 167 Iowa 599, 149 N.W. 833; Union Central Life Ins. Co. v. Caldwell, 68 Ark. 505, 58 S. W. 355.

2. See Brown v. Milliner, Utah, 232 P.2d 202, at page 207; Dragos v. Russell, Utah, 237 P.2d 831, at page 833. In both of these cases the agreement is referred to as a "fiction" and is attributed to an explanation made by Mr. Justice Latimer in Glenn v. Whitney, 116 Utah 267, 209 P.2d 257, but I do not find that term used in that case.

of the necessary acquiescence and that the doctrine recognizes it as a fiction which will not be changed by express proof that no such an agreement exists. Thus the talk of an agreement is merely the legal or roundabout method used by the courts in holding that acquiescence alone is sufficient and it is immaterial whether such an agreement was ever reached.

To that effect is Holmes v. Judge,[3] one of our earliest and most carefully considered cases. There the trial court found that there was no express agreement probably because the evidence showed that the fence and walls of the buildings which were acquiesced in as marking the boundary line were built by tenants and not by the owners of the adjoining lots. In answering the question "Is such an agreement necessary in cases of this kind?" we quoted with approval from Baldwin v. Brown,[4] as follows:

"The supposition of such an agreement (referring to an agreement establishing a boundary line) in cases of long acquiescence in an established line is, as I apprehend, entirely superfluous. The acquiescence in such cases affords ground, not merely for an inference of fact to go to the jury as evidence of an original parol agreement, but for a direct *legal inference as to the true boundary line.* It is held to be proof of so conclusive a nature that the party is precluded from offering any evi-

dence to the contrary. Unless the acquiescence has continued for a sufficient length of time to become thus conclusive, it is of no importance. The rule seems to have been adopted as a rule of repose, with a view to the quieting of titles, and rests upon the same reason as our statute prohibiting the disturbance of an adverse possession which has continued for twenty years. * * *" (Italics taken from the quotation.)

This quotation clearly holds that where a fence or other monument has been acquiesced in as the boundary line for the required period of time, an agreement to that effect is entirely superfluous, that the true boundary line will be inferred therefrom as a matter of law, and that evidence that there was no such agreement is inadmissible because it is immaterial. In other words where adjoining land owners acquiesce in a fence line or other monument as the boundary line between their properties for the required length of time it becomes the boundary line as a matter of law even though there was no express agreement to that effect. Of course if the parties knew that the line which they acquiesced in was not the true boundary[5] or if they expressly agreed that the boundary line would be later determined and the fence or monuments were placed only temporarily until that time[6] and possibly if

3. 31 Utah 269, 87 P. 1009.

4. 16 N.Y. 359, at page 363.

5. Tripp v. Bagley, 74 Utah 57, 276 P. 912, 69 A.L.R. 1417.

6. See Rieske v. Hoover, 53 Utah 87, 177 P. 228.

the line was acquiesced in as the boundary line by mistake [7] a boundary line by acquiescence would not be established.

Although much is said in the cases about estoppel and express agreements on a boundary line the real justification for the doctrine is to stabilize titles to real estate, to prevent uncertainty and litigation over the location of the boundary lines.[8] I am not sure that an express contract without the required period of acquiescence has ever been held to establish a boundary line at a place other than the true boundary line. Certainly there are no Utah cases which so hold,[9] and it is equally certain that the doctrine is not dependent on a true estoppel although there might be cases where estoppel also exists.[10]

If the purpose and object of this doctrine is to stabilize titles and prevent uncertainty and litigation, then that purpose will be readily defeated unless we avoid all technical and fine distinctions. Otherwise

the application of this doctrine will probably create the very thing it was intended to eliminate.[11] For many years after the case of Holmes v. Judge, supra, the doctrine seemed to be quite clear and little difficulty was encountered, but in recent years a lot of uncertainties have crept into it until now the whole doctrine is shrouded in doubt.

As pointed out in the prevailing opinion there are a number of cases which point out as one of the grounds for defeating a boundary line by acquiescence, that the evidence tends to show that there was no express agreement. However, I think in all of those cases this theory was not necessary in order to reach the result, because there were other grounds pointed out in the opinion which were sufficient to sustain the result.[12] I think that there are a number of cases which would have required a contrary result if this theory had been invoked.[13] I therefore disagree with the

7. See Holmes v. Judge, supra, Glenn v. Whitney, supra, Blanchard v. Smith, Utah, 255 P.2d 729. These cases seem to recognize that mistake might defeat a boundary line by acquiescence but they fail to point out the exact nature of the mistake required to have that effect. The question was not before the court in any of those cases and so what was said on that question was dicta.

8. See Holmes v. Judge, supra, Perry Estate v. Ford, 46 Utah 436, 151 P. 59; Young v. Hyland, 37 Utah 229, 108 P. 1124; Rydalch v. Anderson, 37 Utah 99, 107 P. 25, practically all of the cases on this question so hold.

9. See an article to come out shortly in the Utah Law Review by David Martin Cook where the Utah cases are cited.

10. If the owner of an adjoining tract stood by and watched the purchase and sale of his neighbor's property knowing that the purchaser had reason to and did believe that a fence marked the boundary between the two lots he might well be estopped to deny that such was the boundary line, but none of the cases that I have read contain all the necessary elements of such an estoppel.

11. See Article referred to in Note 9 above.

12. See cases cited in the prevailing opinion, also see Article cited in Note 9 above.

13. See Holmes v. Judge, supra; Willie v. Local Realty Co., 110 Utah 523, 175 P. 2d 718; and the recent case of Blanchard v. Smith, Utah, 255 P.2d 729. Each of these cases held that a boundary line by acquiescence was established although

part of the prevailing opinion which relies on the fact that the evidence is inconsistent with an express agreement on the fence line as the boundary as a ground for defeating the establishment of a boundary line by acquiescence.

CROCKETT, Justice.

I concur. I also agree that an express agreement is not necessary to the establishment of a boundary line by acquiescence.

HENRIOD, J., dissents.

the fence and monuments which marked the boundary line were erected under circumstances which indicated that there. was no express agreement.