369 P.2d 117

**Ray NUNLEY and Rosemoyne Nunley, Plaintiffs and Respondents,**

**v.**

**J. B. WALKER and Mary G. Walker, otherwise known as Mary Goff Walker, his wife, et al., Defendants and Appellants.**

No. 9453.

Supreme Court of Utah.

March 2, 1962.

Robert S. Campbell Jr., Salt Lake City, for appellants.

George M. Cannon, Salt Lake City, for respondents.

WADE, Chief Justice.

Defendants, J. B. and Mary Goff Walker, husband and wife, appeal from a Salt Lake County District Court judgment. The trial court quieted title to certain boundary line lands in plaintiffs Ray and Rosemoyne Nunley, husband and wife, who are the respondents here.

The southeast end of Nunleys' land borders on the old county road after it leaves Big Cottonwood Canyon where it crosses the section line going toward the northwest and formerly continued for about 626 feet. The old road then turns sharply toward the northeast across Cottonwood Creek then back toward the northwest and in front of the Old Mill Tavern.

In 1925, Emerette C. Smith was the owner of both the Nunley and the Walker land before the first deed to Carl A. Badger who is Nunleys' predecessor in title. Mrs. Smith and her husband John Y. Smith made their first deed to Badger on November 3, 1925 and on November 23, 1926 the same parties made the second deed to Badger. These deeds were recorded immediately after execution and before the deed by Emerette C. Smith to the Old Mill Tavern Inc. the predecessor in title to the Walker tract on May 20, 1927.

The two maps accompanying this opinion are: No. 1 which shows the disputed fence line and the surveyors' courses of the Badger and the Old Mill long 923 foot

MAP No. 1

courses and the fence line as it is from B to A. No. 2 shows the plat in the County Recorder's Office of this property.

MAP No. 2

The second deed to Badger includes the land conveyed by the first one plus an additional three-cornered tract which joins the first tract all along its southeast boundary. The south boundary line on the second tract continues on the section line running east and west toward the east from where the first tract ended to the Big Cottonwood Canyon County road; thence "along said road approximately north 31° 15′ west 626 feet; thence south from said road 34° 08′ west 95 feet more or less" and at this point the new tract rejoined the southeast end of the northeast boundary line of the original Badger deed. The 95 foot course of the new deed is a continuation in the same direction as the southeastern boundary line of the tract described in the first Badger deed. From there on the description in the two Badger deeds are identical. The next course in both Badger deeds runs "thence north 43° 37′ west 923 feet." This course is called the long course. One of the disputes is whether this course marks the Nunley property boundary line or whether a new boundary line has been established which commences at the same point at the northwest end of this long course and runs from there slightly to the northeast to the southeast end of that course by acquiescence in an old fence line. The Nunleys also claim the disputed tract by adverse possession and payment of the taxes for seven years.

The old county road where it crosses the section line as the road comes from the southeast and is joined by the southeast boundary line of the second Badger deed and which then follows the road to the northwest for 626 feet, continues in the same direction now for some 220 feet as it did when the deed was made. But now instead of continuing to the northwest for 626 feet then turning sharply to the east, it makes a gradual circle to the northeast, commencing just before it reaches the Wagon Wheel Beer Tavern which has been built on the Badger property in 1947. The new road is hard-surfaced but the old road was merely graveled and is now mostly obliterated, and its exact course is not readily determinable and is now in dispute.

The tract described in the deed by Emerette C. Smith to the Old Mill Tavern Inc. lies immediately to the northeast of the Badger deed tract. The boundary lines to the Badger tract and the Walker tract cross each other three times. First near the northwest end of the long 923 foot course where the Old Mill deed course starts slightly south of the Badger deed course and go at first slightly toward each other until they cross, so at first there is an overlapping of these boundary lines, then after the overlapping each boundary line continues in the same direction as it did before for about 900 feet where these

boundary lines join with the 95 foot jog running toward the northeast in the second Badger deed. At the southeast end the two boundary lines are about 50 feet apart, and the Old Mill boundary line is about 45 feet southwest from the old fence line mentioned above. The 95 foot jog in the Badger tract boundary line constitutes the north corner of the three-cornered tract described in the second Badger deed. The Old Mill deed course does not stop at the end of the 923 feet but continues beyond the 95 foot jog onto the Badger property a total distance of 1004 feet and from there on the property described in the two deeds overlaps until the boundary line in the Old Mill deed turns across the old county road toward the east more than 220 feet northwest of the south end of the Badger property boundary line. Thus the boundary line of these two tracts although never far apart are nowhere contiguous.

Where the two tracts overlap the plaintiffs Nunleys' claim has priority since Mrs. Smith had conveyed the overlapping property to Badger she could not thereafter convey any right to such property to the Old Mill.

The trial court correctly determined the boundary line between plaintiffs' and defendants' property where the tract described in the Old Mill deed overlapped the property conveyed to Badger. In making this determination a number of inconsistencies in the Badger deed had to be adjusted and some questions of fact, particularly with reference to the Old Road had to be determined.

We agree with the trial court's holding that the course running northwest along the county road from the section line for 626 feet should follow the center line of the county road. Although no bends in the county road are indicated by the Badger deed, three slight turns in that road which are indicated by the deed to property on the opposite side of that road which are south of the boundary line of the Old Mill property were properly recognized and affirmed by the trial court.

There was a definite conflict in the evidence of the course of the old road after it contacted the Walker property. The trial court determined this course in accordance with the degree and minute description in the Badger deed although such directions are therein described only as "approximately." This determination of the trial court was based on a sharp conflict in the evidence by the witness for the opposing sides. Many of these witnesses had seen the road as it originally existed and other witnesses attempted to determine where the old road was by the gravel formation they found on the ground. The defendants Walker emphasized that the 626 foot distance of the Badger deed does not reach the north corner of the 95 foot jog

in the second Badger deed. In view of that fact, their surveyor suggested that if the direction of the road were changed to the northwest so that the old road followed the course claimed by the defendants Walker, the 626 foot distance would reach the east end of the 95 foot jog in plaintiffs Nunleys' boundary line and the west end of that jog would fit in the Badger description of the long course line and with the description in the second Badger deed tract.

The trial court resolved the inconsistency of the short 626 foot course and failure of the three-cornered tract description to close by changing the course of the boundary line at the northwest end of the 626 foot line directly across the north end of the three-cornered tract to the southeast end of the old fence line. This is where plaintiffs claim the boundary line at the southeast end of the 923 foot long course is. We affirm the holding of the trial court after carefully considering these conflicting problems and the conflict in the evidence. There are obvious conflicts and inconsistencies in the Badger second deed description and the finding of the trial court as to where the old county road was also requires some adjustment in the north end of the three-cornered tract description. In view of all of these conflicts and reconciliations necessary we conclude that the trial courts holdings and findings of fact were correct.

The law and the evidence supports the trial court's holding that the old 923 foot fence line established the boundary line between the land of the plaintiffs and the land of the defendants by acquiescence.

The evidence in favor of plaintiffs Nunley showed; that Hugh J. Ford, a son-in-law of Badger with his wife, Badger's daughter, moved onto the Badger tract and lived there for about three years. In March, 1928, Ford and a crew of workmen fenced the Badger tract placing the long 923 foot fence where it now stands. In so doing under Badger's direction he placed the fence on the line indicated by Badger's surveyor stakes which purportedly indicated the boundary line of the Badger tract. During the three years that Ford lived there he maintained that fence line as the boundary line between the Badger and the Old Mill tracts. He pastured horses, cattle and goats thereon. After the Fords left the Badger tract until Badger's death in 1939 this fence line was constantly maintained and repaired by the occupants of the Badger property. The plaintiffs Nunley went into possession of the Badger tract in 1943 at which time they repaired the fence in question which was pointed out to them as the boundary line, and they occupied the Badger property up to that fence line and not beyond until they contracted to sell the tract to Frank Christensen in 1946. Christensen and his family have

occupied the Badger tract up to the present time. In 1947 they built the Wagon Wheel Beer Tavern on the Badger tract. During all of those periods the evidence shows that the occupants of the Badger tract have considered this old fence line as the boundary line between the Badger tract and the Old Mill property.

■ The evidence further indicates that the Old Mill Tract has been occupied from 1927 up to the present time. The defendant J. B. Walker has been acquainted with the property since 1906. He has been interested in its ownership since 1927. Part of the time as a stockholder in the Old Mill Tavern Inc. and since then as a co-owner, during all that time, since the construction of this fence he has seen and observed the fence line and its condition and existence. The plaintiffs evidence is clear that this fence line has been an openly and notoriously maintained line between the two properties since 1928 to shortly before the commencement of this action, and that neither the defendants nor anyone else has ever claimed any interest in the land on the Badger side of the fence except the owners of the Badger tract and that the occupants of the Walker tract have occupied and used the property up to that fence, and not beyond during all of the period in question for approximately 30 years. There is however, a conflict in the evidence on this question. J. B. Walker testified that this fence line and a number of other fences had been maintained on both plaintiffs' tract and defendants' tract for the owners benefit without any regards for boundary lines and that such use has been continued during all the time since he became acquainted with the property as a boy of fourteen in 1906. He claims that this fence was not built as a boundary line fence then nor treated as such during the period of time in question, but that this fence line was built long before any conveyances made by Mrs. Smith. He testified that during the period when Mrs. Smith owned both the tracts of land she maintained these fences for the use of the property as one tract and not as a boundary line. The trial court found the facts on this evidence in plaintiffs' favor. Although the question of a boundary line by acquiescence is a matter of equity, we will reverse the trial court's findings of fact only if we conclude that they are clearly erroneous.[1] From a careful study of the record in this case, we are unable to conclude that the findings of fact are clearly erroneous, so they are affirmed.

■■ It is well recognized in this state that if the owners of adjoining real property

---

1. Constitution of Utah, Art. VIII, Sec. 9 & Annotations on this question thereto and in re Drainage area of Bear River in Rich County, 12 Utah 2d 1, 361 P.2d 407; Rich v. Stephens, 79 Utah 411, 11 P.2d 295.

have occupied their respective premises up to a boundary line which is visibly marked by fences, buildings, walls, copings or other monuments for a long period of time and that they have mutually recognized such monuments as marking the boundary line between their respective properties, the law will conclusively presume or imply an agreement fixing the boundary line in accordance with such monuments.[2] It is true that if there is no uncertainty as to the location of the true boundary line the parties may not, knowing where the true boundary line is, establish a boundary line by acquiescence at another place.[3] But if the parties do not know where the actual boundary line is, even though they could have readily ascertained that fact by a survey, a boundary line by acquiescence may be established.[4] Under the foregoing rules of law on this question, a judgment in favor of the plaintiff must be affirmed.

Costs to respondents.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

2. See Harding v. Allen, 10 Utah 2d 370, 353 P.2d 911; Johnson Real Estate Co. v. Nielson, 10 Utah 2d 380, 353 P.2d 918; Motzkus v. Carroll, 7 Utah 2d 237, 322 P.2d 391; Ekberg v. Bates, 121 Utah 123, 239 P.2d 205; Brown v. Milliner, 120 Utah 16, 232 P.2d 202; Dragos v. Russell, 120 Utah 626, 237 P.2d 831; Hummel v. Young, 1 Utah 2d 237; 265 P.2d 410, two opinions; Willie v. Local Realty Co., 110 Utah 523, 175 P.2d 718; Holmes v. Judge, 31 Utah 269, 87 P. 1009.

3. See Tripp v. Bagley, 74 Utah 57, 276 P. 912, 69 A.L.R. 1417.

4. See Brown v. Milliner, Supra note 2; Hummel v. Young, Supra note 2; Motzkus v. Carroll, supra note 2.