HOME OWNERS' LOAN CORPORATION v.
DUDLEY et al.

No. 6492. Decided September 7, 1943. (141 P. 2d, 160.)

Rehearing denied February 25, 1944.

*Elias Hansen,* of Salt Lake City, for appellant.

*Samuel J. Carter,* of Salt Lake City, for respondent.

McDONOUGH, Justice.

The trial court entered judgment and decree quieting title in plaintiff corporation to all of a tract of land in Utah County hereinafter described as Tract C, which was enclosed by a fence. Defendant and appellant Inger K. Olesen Nybo counterclaimed and cross-complained against plaintiff and other defendants to quiet her title to a tract of land described as follows: Beginning 10.5 chains west and south 5 degrees 30 minutes east 10.44 chains from the northeast corner of the southeast quarter of section 25, township 8 south, range 2 east of the Salt Lake Meridian; thence south 5 degrees 30 minutes east 5.5 chains; thence west 1.1 chains; thence north 5 degrees 30 minutes west 5.5 chains; thence east 1.1 chains to the place of beginning. This tract to which appellant claims title we will refer to hereafter as Tract A.

Plaintiff proved a record title to realty hereinafter designated as Tract B, which practically adjoins Tract A on the east; but the decree as well as the complaint declare plaintiff to be the owner of Tract C which includes not only a substantial part of Tract B to which appellant claims no title at all, but which includes nearly all of Tract A to which appellant does assert title. Plaintiff acquired the

record title to Tract B by warranty deed on June 8, 1936, from Moses W. Beckstead and wife. The tract so de- appellant claims title. The westerly boundary of Tract B is 72.6 feet east of the state highway, and it is slightly east of the easterly boundary line of land described as Tract A. The accompanying plat illustrates the claims of the re- spective parties, and the boundaries of Tracts A and B, and how Tract C to which plaintiff acquired a decree quiet- ing title, overlaps on, but does not entirely cover Tracts A and B. The boundaries of Tract A are indicated by a dotted line, Tract B by a thin line, and Tract C which fol- lows the fences, by a heavy line.

By its complaint plaintiff alleges title generally to Tract C, and by her answer, counterclaim and cross-complaint defendant and appellant alleges ownership in fee of Tract A and she denies that plaintiff has any right, title, equity or interest in Tract A, except a right of way one rod in width across said tract to the state highway. She also alleges payment of all taxes assessed against said tract of land. By its reply plaintiff alleges in substance that "for more than 20 years" it and "its predecessors in title have occupied, under a claim of right and adversely to the whole world," the tract of land described in the complaint (Tract C), and "that for more than said period of 20 years, said described real property was and now is enclosed with a substantial wire fence; and said real property has been, during said period of time, continuously cultivated and occupied by cross-defendant Home Owners' Loan Corporation, and its predecessors in title, and that said use and occupation was and has been, during said period of more than 20 years, peaceable, without interruption, open, notorious and exclusive." Plaintiff does not, however, allege payment of any taxes.

Findings of fact, conclusions of law, and judgment and decree were entered in favor of respondent corporation, and defendant was denied any relief against any of the parties to the action. By this appeal appellant contends that the evidence does not support the findings of fact, conclusions of law or the judgment and decree; and that the lower court erred in finding that plaintiff and its predecessors in title were in adverse possession of the disputed area for 20 years, in that there were no taxes paid by plaintiff or its alleged predecessors in title for the tract of land in dispute. Appellant also claims the trial court erred in refusing to grant judgment and decree quieting her title against plaintiff and all of the cross-defendants.

Respondent contends that there is competent evidence to support the judgment of the lower court on the basis of any

one or more of the following claims of acquired title: (1) That plaintiff established a record title and proved defendant has no title. (2) That for many years the fence along the east side of the highway was acquiesced in as the westerly boundary line of land to which plaintiff acquired the record title. (3) That plaintiff and its predecessors in interest acquired title to the disputed area by adverse possession without payment of any taxes because no taxes were lawfully assessed. Appellant argues that the foregoing three theories on which plaintiff was permitted to proceed at the trial are inconsistent and that plaintiff should have been required to make an election. Without any attempt to determine whether plaintiff needed to make any election in view of the particular facts of this case, we shall examine the contentions of respondent to ascertain whether they actually dispose of the errors assigned by appellant.

In support of its claim of record title, plaintiff produced in evidence the abstract of title and a plat map of a survey made by a licensed surveyor in 1939, neither of which shows any record title in plaintiff to the area in dispute. This suit was not instituted against appellant Mrs. Nybo for reformation of any deed which she delivered to some predecessor in title to plaintiff, on any theory that there was a misdescription. Plaintiff's record title to Tract B came through Mrs. Nybo, who at one time owned not only Tract B to which plaintiff acquired the record title through mesne conveyances, but also a great deal of the adjourning areas.

The surveyor who made the fence-line survey for plaintiff, and who furnished plaintiff with the description of Tract C used in the complaint, testified that he located the starting point with reference to the relocated east quarter corner monument of section 25. Such relocation was made in about 1910. Both the record title and the description contained in the complaint, are based on the relocated monument. There is no allegation nor evidence to the contrary. In order to get a starting point which would be on the east line of the

state highway instead of according to the call in the record title, the description of Tract C in the complaint is made to start 10.596 chains west instead of 10.56 chains west, and 10.905 chains *south* instead of 11.0 chains *south six degrees east.* The call from the monument to the starting point for Tract B to which plaintiff acquired the record title, is 72.6 feet easterly from the starting point of Tract C which covers most of Tract A. The starting point for Tract C on which the decree is based differs from the starting point for Tract B, in that the point is on the easterly line of the state highway and is obtained by adding 2.376 feet to the first course from the monument and by eliminating the bearing of six degrees to the east from a due south course. Thus it appears that as far as the record title is concerned, substantially all, if not all of the difference between the claims of respondent and appellant arise from the fact that the record title description of Tract B commences "10.56 chains west and 11.0 chains South 6° *East*" from the east quarter corner of the section, while the beginning point of Tract C described in the complaint and in the decree which covers nearly all of Tract A, is described as "10.596 chains west and 10.905 chains *south,*" the bearing to the east being eliminated.

Plaintiff's description of Tract C is made with reference to the relocated monument as are all of the other descriptions. Although plaintiff described the tract with reference to the present location of the east quarter monument, and relied on the relocated monument for purposes of showing boundaries, it attempted to introduce evidence to show that the relocated monument is not in the original location. No field notes from the surveyor general's office nor actual surveys between monuments, were offered to show where the monument was originally located, if in a different location. The original location of a monument controls, and if it is obliterated, the court is concerned in ascertaining where it was originally located. *Henrie* v. *Hyer,* 92 Utah 530, 70 P. 2d 154; *Roach* v. *Dahl,* 84 Utah

377, 35 P. 2d 993; *Moyer* v. *Langton,* 37 Utah 9, 106 P. 508. A survey monument relocated by proper authority is presumed to be placed where the surveyor originally located it, until and unless the contrary is shown by competent evidence.

Plaintiff offered a private survey plat of certain lands made in 1880, but the chart or map does not purport to show a survey of the disputed area. The witness who testified was not the surveyor who prepared the map, but he was permitted to declare that the distance ▮ indicated as 10.56 chains from the monument is the distance to the road, although the boundaries marked on the plat do not purport to be surveys of any roads or highways. In fact, roads are indicated by a single dotted line. The legend on the chart shows that the scale of measurement is 5 chains to the inch. A mere glance at the line indicating the road reveals the fact that the distance between such dotted line and the property line surveyed is in excess of the width of any road existing in that area. The witness should not have been permitted to interpret the plat or chart contrary to its express or apparent legend and markings. Even if the map had actually specified that the westerly line of the property shown bordered on the road in 1880, such fact would be immaterial in view of the fact plaintiff proved the highway now in existence is 72.6 feet westerly from such marked line.

Apparently for the purpose of showing a surplus of 134 feet in the quarter section, measuring from the relocated east quarter monument to the center of the section, and also to show that the east quarter monument was not properly relocated, an engineer who had ▪ made some measurements in that vicinity, was called to testify. He did not survey the area in dispute. By taking the calls in the deed which Mrs. Nybo claimed conveyed the disputed area to her from Jane Dudley, widow of the patentee, the witness attempted to show that her property would not extend east of the highway. His testimony could

have no probative value in view of the fact he did not survey the area, and while he testified there was a surplus of 134 feet, he did not distribute the surplus nor otherwise account for it. His attempt to show appellant had no record title was valueless.

The plat in the abstract of title introduced in evidence by plaintiff shows the conveyance from Jane Dudley to Mrs. Nybo extends across the highway to the east side and that it covers most if not all of the area in dispute. A tax deed shown as entry 17 in the abstract, from Utah County to Mrs. Nybo, dated July 18, 1913, covers all of the land in dispute and additional lands. The tax deed was sufficient to give Mrs. Nybo at least color of title. Respondent counters with the argument that the abstract shows that Mrs. Nybo conveyed to Sarah Ellen Beckstead all of the land acquired from Jane Dudley, because the courses designated in the deed of Mrs. Nybo are as long if not longer than the courses in the deed from Jane Dudley. However, an examination of the descriptions in those deeds discloses the fact that the deed from Mrs. Nybo to Sarah Ellen Beckstead expressly limits the conveyance to lands west of the highway. The deed states, "to the west side of the county road; thence North 5.50° West along the West side of said county road 5.41 chains," etc.

Permanent and natural objects and monuments or land marks designated in descriptions control over metes and bounds. 11 C. J. S., Boundaries, § 50, pp. 603-605, *Henrie* v. *Hyer*, supra; and *Park* v. *Wilkinson*, 21 Utah 279, 60 P. 945. The recitals in the deed from Mrs. Nybo clearly indicate that she did not intend to convey and that she did not convey any land east of the highway.

Plaintiff could prevail on a claim of record title only by showing good title in itself, not by showing some defects in the title of defendant. According to the evidence produced by plaintiff, appellant has the record title to Tract A and there has never been any conveyance to plaintiff. The abstract of title establishes her title

and shows she has not been divested of such title, and that the land was taxed as her property and that she paid taxes thereon. The evidence shows more than a mere color of title in appellant. The respondent's claim of a record title therefore fails.

The second claim of plaintiff is that the fence along the easterly side of the highway was established as the boundary line of the property to which plaintiff acquired the record title, (Tract B), by a long period of acquiescence. Such contention lacks both factual and legal merit. The attempt to move the boundary line 72.6 feet westward by a claim of acquiescence and recognition, does not appear to be founded on any bilateral agreement between adjoining land owners. The testimony shows the fence was erected about 1892. The westerly section of the fence which plaintiff claims encloses its land, constitutes a portion of the fence along the easterly side of the highway. That fence was established long before Mrs. Nybo acquired title to the various tracts of land, both east and west of the highway. The highway fence was erected about the time the lands on both sides were in common ownership, and it was not constructed to settle any boundary dispute.

As a general rule a fence becomes a boundary line separating the estates of adjoining land owners by a long period of acquiescence where the respective owners have established such fence as a practical means of fixing the boundary line between them when the location of the boundary line previously was unknown, uncertain or the subject of a dispute. The case of *Tripp* v. *Bagley,* 74 Utah 57, 276 P. 912, 69 A. L. R. 1417, constitutes a complete answer to the arguments of plaintiff under its claim of an established fence line by acquiescence. The fence was not shown to have been established to settle any dispute or to establish any boundary line, the true location of which was unknown or even uncertain. See *Briem et al.* v. *Smith et al.,* 100 Utah 213, 112 P. 2d 145. Nor is the evidence here such as to justify a finding that the parties

hereto recognized the fence line on the highway as the true boundary line. The fact is that one time the highway went through the properties of appellant. She owned lands on both sides. It could hardly be said that a highway boundary line fence could have been erected to settle a dispute between adjourning land owners when the lands on both sides of the road were owned by the same person. See *Coop* v. *George A. Lowe Co.,* 71 Utah 145, 263 P. 485.

The second contention of respondent therefore fails, and the judgment and decree cannot be upheld unless plaintiff proved in itself at the time of the trial, a valid title to the disputed area acquired by adverse possession. Such a title could be acquired only in accordance with the express provisions of the statutes, U. C. A. 1943 (R. S. U. 1933) 104-2-7 to 104-2-12 (C. L. U. 1917, sec. 6451 to 6456). The statutes require the adverse possession to be for a continuous period of seven years, during which period the claimant in possession must have paid all taxes levied and assessed upon the land according to law.

By its complaint, respondent attempts to allege title generally, but by its reply to the counterclaim and cross-complaint of appellant, it attempts to show title by adverse possession. Its plea of title by adverse possession is fatally defective for failure to show payment of all taxes assessed against said land. An adverse claimant has the burden of pleading and proving full compliance with the statute, including payment of all taxes lawfully assessed or that taxes were not assessed, or if assessed were illegally assessed. By his pleadings, the adverse claimant must state all of the essential facts which constitute compliance with the statute, including payment of taxes for the full period of seven years or facts which show legal justification for non-payment of taxes. *Rio Grande Western R. Co.* v. *Salt Lake Investment Co.,* 35 Utah 528, 101 P. 586; *Central Pacific Ry. Co.* v. *Tarpey,* 51 Utah 107, 168 P. 554, 1 A. L. R. 1319; *Hanks* v. *Lee,* 57 Utah 537, 195 P. 302; *Tripp* v. *Bagley,* supra; *Coop* v.

*George A. Lowe Co.,* supra. These cases clearly indicate that unless all of the requirements of the statutes have been met, adverse possession cannot develop into a legal title, and that payment of taxes assessed against the land is one of the requisites for acquisition of title by adverse possession.

Respondent contends that appellant had a defective title or no title at all, and that taxes assessed in her name did not constitute a lawful assessment of taxes against the land so as to make it necessary for either Moses W. Beckstead or plaintiff to pay them in order to acquire title by adverse possession. Admittedly, plaintiff never paid any taxes assessed against Tract A, and all taxes which were paid were assessed in the name of and paid by and in the name of appellant. Even if it were argued that appellant did not have a clear record title to Tract A, ever since 1913 she has had more than a color of title, and she has claimed to be the owner of said land. 80-5-4 and 80-5-12, R. S. U. 1933 (U. C. A. 1943) authorizes taxes to be assessed to the owner or claimant. The only competent evidence of any record title in this case indicates that appellant is the record owner as well as the claimant. The taxes were properly assessed to her.

Some effort was made to show that taxes were paid on the disputed tract by Moses W. Beckstead, grantor of plaintiff, by reason of the fact that improvements identified as a house and other buildings were assessed to Moses W. Beckstead and plaintiff in connection with the description of Tract B, although since 1929 there has never been a house on the land deeded to plaintiff by the Becksteads. The only house occupied by the Becksteads or by tenants of plaintiff since 1929 in connection with Tract B is the house situated on Tract A. Plaintiff takes the position that payment of taxes on improvements including a house which is in fact situated on the disputed tract rather than on the tract to which the improvements were assumed to be attached, constituted payment of taxes

on this strip of land in controversy. However, 104-2-12, R. S. U. 1933 provides:

"In no case shall adverse possession be considered established under the provisions of any section of this code, unless it shall be shown that the *land* has been occupied and claimed for the period of seven years continuously, and that the party, his predecessors and grantors have paid all taxes which have been levied and assessed upon such *land* according to law." (Italics added.)

Plaintiff failed to prove any payment of taxes on the land in dispute, and by its own witnesses and testimony proved that the appellant paid all taxes assessed against this land. If either plaintiff or Moses W. Beckstead had actually claimed adverse possession and had not taken for granted that the deed to Tract B covered the area of Tract A now in dispute, there probably would have been some effort to pay taxes to assert an adverse claim. The county treasurer who testified on behalf of plaintiff stated that the assessment was changed from the name of Sarah Ellen Beckstead to Inger Katherine Nybo. He explained that Mr. Nybo came in and said the property did not belong to Mr. Beckstead and wife. The treasurer looked into the records and discovered that the conveyance from the Nybos to Sarah Ellen Beckstead did not go to the east side of the road, and he told Mr. Nybo to bring in Mr. Beckstead or his wife and have either of them state whether they were interested in it; and that when Beckstead came into the office he stated he was not interested in the tract. This conversation was after the Becksteads conveyed to plaintiff, but it is rather significant that such evidence produced by respondent showed that Moses W. Beckstead merely disclaimed any interest. He did not tell the treasurer he had ever claimed title or possession adversely, nor that he had ever transferred any possessory interest to Home Owners' Loan Corporation, or that the latter then owned the property.

One of the contentions of respondent is that there was a period of more than seven years while Moses W. Beck-

stead was in actual possession of the disputed area during which no taxes were paid for the reason none were assessed. It is doubtful if the record reveals any competent evidence showing that seven years intervened during which no taxes were assessed, but assuming that evidence introduced was competent to establish such fact, nevertheless it would be difficult to construe the conduct of the Becksteads as amounting to adverse possession. The plaintiff claims adverse possession on its part and on the part of Moses W. Beckstead as its predecessor in title for a period of more than 20 years. If a person seriously intended to hold possession of land adversely in the effort to acquire title in accordance with the statutes which require payment of taxes, he would not be expected to permit 20 years to elapse without some payment of the taxes which were assessed during that period, nor would he likely stand by and permit the record owner or one claiming to be the record owner to pay them. (Payment of taxes would, itself, be a manifestation of a claim of ownership.)

Even if it could be successfully contended that there was a period of not less than seven years during which the Becksteads occupied the disputed area during which time no taxes were assessed, we believe the evidence is insufficient to prove that such possession was adverse for the requisite period of time. Plaintiff was in possession for less than seven years, and it paid no taxes on any part of Tract A. It could not possibly establish a title by adverse possession unless it could tack its possession onto an actual adverse possession of the Becksteads and show exemption from the statutory requirement to pay taxes.

Where adverse possession is asserted on the basis of contiouous occupation and possession under a written instrument or decree of a court of competent jurisdiction, 104-2-8 provides that possession and occupation of the land described in such instrument or decree or any part thereof is deemed to be adverse possession of all of the property

included within such written instrument or decree upon which the claim of adverse possession is founded, (except when land so included consists of a tract divided into lots). As previously pointed out, the deed from Moses W. Beckstead and wife to plaintiff corporation conveyed a good record title to Tract B, but Tract B does not by its terms purport to cover any part of Tract A which respondent claims by its description of Tract C.

The evidence clearly illustrates the fact that plaintiff claimed title under its deed from the Becksteads to Tract B, for the following reasons: (1) Respondent and the Becksteads paid taxes only on Tract B, and neither paid any taxes on Tract A, the only taxes ever paid on Tract A having been paid by Mrs. Nybo. (2) Respondent conveyed to the State Road Commission part of Tract B, in which deed the description follows the courses in the record title to Tract B, and not the courses in the description of Tract C. The conveyance to the State Road Commission was made after the land was surveyed and after it was discovered that Tract B does not cover any part of Tract A and said Tract B does not follow the fence lines. Plaintiff's claim of adverse possession to Tract C, as far as it overlaps on Tract A is concerned, is not based on any written instrument, for no instrument by its terms purports to convey any part of Tract A to the Becksteads or to plaintiff corporation.

Section 104-2-10 provides:

"Where it appears that there has been an actual continued occupation of land under claim of title, exclusive of any other right, but not founded upon a written instrument, judgment or decree, the land so actually occupied, and no other, is deemed to have been held adversely."

Even though Moses W. Beckstead had actually occupied the major part of Tract A adversely as contended by plaintiff, there is nothing in the record to indicate that he intended or did actually convey to plaintiff any claim as to Tract A. As far as 104-2-8 is concerned, the conveyance

of Tract B would not operate as a conveyance of any color of title to land not therein described nor appropriately mentioned in some manner as to show an intention to convey the same. As a general rule, a person who has a record title to one tract of land, and who also occupies an adjoining area adversely, by conveyance of the land to which he holds record title he does not thereby transfer title to land held adversely. *Hanlon* v. *Ten Hove*, 235 Mich. 227, 209 N. W. 169, 46 A. L. R. 788.

There must be privity between persons successively holding adversely in order to tack the possession of a predecessor in possession to that of his successor. Numerous cases hold that a deed does not in and of itself create any privity between grantor and grantee as to land not described in the deed, although occupied by the grantor in connection therewith, even if the grantee enters into possession of the adjoining area claimed to be held adversely by his grantor and the grantee uses such land in connection with the land actually conveyed. See cases in 46 A. L. R. 793 notes. There are some cases, however, collected in the note in 46 A. L. R. 795, 796, which hold in effect that adverse possession may be tacked onto a prior adverse possession without a deed of conveyance or written instrument, and that a transfer of possession sufficient to create privity of possession between successive occupants may be made by parol or implied from circumstances which show an intent to transfer the possessory claim. However, even under such rule, if plaintiff intended to hold possession of the major part of Tract A adverse to the title and ownership of appellant from the date it received the deed to Tract B from the Becksteads, it could not tack its possession to the possession of the Becksteads unless the Becksteads intended their possession to be adverse.

There is no testimony in the record nor any other evidence which tends to show that even the plaintiff had any intention to occupy any part of Tract A adversely at the time it obtained a conveyance to Tract B from the Becksteads.

Respondent Home Owners' Loan Corporation held a mortgage on Tract B and the deed it obtained was to settle the mortgage indebtedness. When it received the deed it apparently assumed that the deed followed the fence lines extending over to the state highway. It did not have the area surveyed until 1939, and as late as the date when the trial began, plaintiff attempted to show that it had a valid record title. No proof was offered of any adverse possession on the part of Moses W. Beckstead either at the time the mortgage was executed or at the time the deed was given to satisfy the mortgage. Neither the mortgage nor the deed to Tract B purports to cover any part of Tract A or to make the state highway the westerly boundary line of Tract B. No proceeding was instituted at any time to reform the deed from the Nybos or from the Becksteads to Tract B to make either one describe Tract C as set forth in the complaint. There was no suit against any person for reformation, either on the theory that there was an intention to convey the disputed area or that there was a mutual mistake as to boundaries. The Becksteads were not even made parties to this action.

Evidence was offered to show that the disputed area of Tract A was protected by a substantial enclosure for many years, although the enclosure covers most of Tract A to which plaintiff has no record title as well as part of Tract B. There was some evidence that the Becksteads occupied the entire land within the enclosure, although the testimony was rather general and might refer more to land deeded to Moses W. Beckstead than to any part of Tract A. There was some testimony of planting fruit trees and alfalfa on the disputed tract, although no dates were given. The strongest evidence was the proof that in 1929, after the Nybos left the vicinity and moved to Ogden, the Becksteads built a five-room brick house in the southeasterly corner of Tract A, to replace an old house which was on Tract B but subsequently torn down. Mrs. Beckstead's testimony indicates that she and her husband believed their deed to

Tract B covered all of the land enclosed by the fence, (Tract C).

Mrs. Beckstead did not testify to any possession on her part or on the part of her husband being adverse. She stated that at the time of the construction of the new home they did not know any other person claimed title to it, and that she did not hear that any other person claimed title to it until a short time before they moved away. Moses W. Beckstead himself did not testify, and the evidence as to his conversation with the county treasurer hereinbefore mentioned could not be construed to show he ever claimed any right to the disputed tract. In fact, there is lacking any positive testimony that the possession of the Becksteads was adverse or that their encroachment onto Tract A by building a house or by any other acts was the result of anything but an honest mistake in judgment as to boundary line of Tract B.

Mrs. Nybo lived in Ogden during a considerable part of this period, and there is no evidence that she knew of any encroachment on Tract A until a short time before the Becksteads conveyed to Home Owners' Loan Corporation all of Tract B, at which time she asserted claim to the property in dispute. She did not induce the Becksteads to make any improvement on Tract A. There is nothing to indicate that the Becksteads intended to occupy any more ground than what was described in their deed to Tract B. The evidence that the improvements were made by the Becksteads in good faith, standing alone, would not be sufficient to meet the requirements of the statutes on adverse possession, although there may be grounds for relief under the statutes on "occupying claimants," 78-6-1 to 78-6-4, R. S. U. 1933 (U. C. A. 1943). *Fares* v. *Urban*, 46 Utah 609, 613, 151 P. 57.

The claim of title by adverse possession completely fails. The judgment and decree therefore cannot be upheld under any theory of title advanced by respondent. For the reasons hereinabove indicated, the judgment is reversed and the

cause is remanded to the district court with directions to make findings of fact, conclusions of law, and to enter judgment and decree quieting title to the land designated as Tract A in the appellant against respondent and cross-defendants. Appellant shall recover costs against respondent only.

WOLFE, C.J., and LARSEN and MOFFAT, JJ., concur.

HOYT, District Judge (dissenting).

I dissent. If plaintiff's grantor Beckstead occupied and used the tract in dispute continuously for seven years supposing that it was described in his deed and claiming to be the owner, and if during that period the land was not assessed for taxation, and if appellant stood by and allowed Beckstead to occupy, use and claim the land and to build a house on it then I think Beckstead acquired good title by adverse possession. Adverse possession does not depend upon intent to deprive another of his property. Possession taken under a mistaken belief that the possessor has title does not argue against the possession being adverse. 2 C. J. S., Adverse Possession, § 84, p. 630.

"Most assuredly greater consideration is due to title by adverse possession based upon an honest mistake than to one based upon deliberate and wilful wrong."

*Johnson* v. *Thomas*, 23 App. D. C. 141, 150, quoted in *McMillan* v. *Fuller*, 41 App. D. C. 384, 391. Payment of taxes is not essential either to show the adverse nature of the possession nor to complete the steps necessary to acquire title, where no taxes are assessed against the property. 2 C. J. S., Adverse Possession, § 171, p. 746; *Utah Copper Co.* v. *Chandler*, 45 Utah 85, 142 P. 1119. Here it appears that the land was not assessed for taxation from 1925 until 1939. Plaintiff's predecessor, Beckstead, did however, pay taxes assessed upon the house which he had erected on the land during that period.

I think that, under the circumstances of this case, plaintiff is not prevented from claiming the benefit of the adverse possession of the land by its grantor Beckstead, even though it be adjudged that the land is not embraced within the survey description in plaintiff's deed. The circumstances. seem clearly to show that Beckstead intended to mortgage to plaintiff and later to convey to plaintiff the tract of land in controversy. It seems obvious that plaintiff intended its mortgage and deed to include the tract where the home was located, the tract which abutted upon the state highway. If Beckstead gave plaintiff a conveyance which he supposed described this tract and delivered possession of it to plaintiff then I think that under the authorities referred to in the opinion, cited from 46 A. L. R. 793, 795, plaintiff could tack Beckstead's period of adverse possession to its own period of adverse possession and, if for any seven years continuously during that time the land was not assessed for taxation, the plaintiff acquired good title as against appellant.

PRATT, J., on leave of absence.