FILED
United States Court of Appeals
Tenth Circuit

July 8, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DAVID YOUNG,

      Plaintiff-Appellant,

v.

KEVIN ROBSON; DANIEL
BERTCH; BERTCH & ROBSON,
INC.; DUVAL HANSEN WITT &
MORLEY, P.C.; GORDON DUVAL;
GREGORY HANSEN; DUVAL
HAWS & MOODY, P.C.,

      Defendants-Appellees.

No. 11-4055
(D.C. No. 2:07-CV-00643-TS)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **TYMKOVICH** and **GORSUCH**, Circuit Judges.

In this legal malpractice case brought under Utah law pursuant to the

district court's diversity of citizenship jurisdiction, plaintiff David Young is

appealing the memorandum decision and order entered by the district court

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

granting summary judgment in favor of: (1) defendants Kevin Robson, Daniel Bertch, and Bertch & Robson, Inc. (the "Bertch Defendants"); and (2) defendants Gordon Duval, Gregory Hansen, Duval Haws & Moody, P.C., and Duval Hansen Witt & Morley, P.C. (the "Duval Defendants").  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.[1]

## I.

This legal malpractice case involves Young's claim to ownership of three parcels of real property, known as Plats E, G, and H, located in the Wade Springs Subdivision in Pleasant Grove, Utah (the "Property") and a related quiet title action that was filed by Young in a Utah state court in May 2002.  The background and chronology of the relevant events and the underlying state and federal court litigation are as follows:

1.  In May 1976, Walker Bank and Trust Company contracted to sell the Property to A&H Investments (A&H).

---

[1]     This appeal was originally filed in Appeal No. 09-4184.  However, because of a final judgment defect in the underlying district court case that was not discovered until after all briefing was complete, Appeal No. 09-4184 was dismissed for lack of jurisdiction on December 29, 2010.  Subsequently, an appealable final judgment was entered by the district court, and plaintiff Young filed this new appeal on March 30, 2011.  With the consent of all of the parties to this appeal, this appeal is being decided based on the briefs the parties submitted in Appeal No. 09-4184 and no additional briefing has taken place.  In addition, the record on appeal consists of: (1) the two volumes of pleadings that were transmitted by the district court to this court in Appeal No. 09-4184; and (2) the supplemental appendices that were filed in Appeal No. 09-4184 by the Duval Defendants in connection with supplemental briefing.

2. In December 1976, A&H contracted to sell the Property to McKean Construction Company ("McKean").

3. In October 1977, McKean assigned its contract rights pertaining to the Property to Scott Construction Company ("Scott").

4. In January 1979, Scott contracted to sell the Property to Young.

5. Neither McKean, Scott, nor Young ever received or recorded a deed to the Property.

6. In December 1980, Young recorded a document entitled "Notice of Interest in Real Property" in the Utah County Recorders Office. This document described the Property and stated that Young had an "interest" in it.

7. In May 1981, A&H recorded a "Trustee's Deed" to the Property in the Utah County Recorders Office. Walker Bank and Trust Company was one of the grantors of the Trustee's Deed. This is the first deed pertaining to the Property that A&H recorded in the Utah County Recorders Office.

8. In June 1981, an attorney purporting to represent A&H sent a letter to Young informing him that Scott was in default under its contract with A&H and that A&H was therefore going to seek the return of the Property. Young claims that he never received the notice of default letter and did not learn of it until 2004.

9. In March 1982, Wendell P. Hansen, as "General Partner" of A&H, recorded an Affidavit in the Utah County Recorders Office which states that A&H

had repossessed the Property because Scott was in default and had breached its agreement with A&H and therefore no longer had any right, title, or interest in the Property.

10. In February 1993, A&H sold Plat E of the Property to All American Development & Construction, L.C. ("All American"), and All American received and recorded two deeds for Plat E. As relevant to this action, All American then built infrastructure for a residential housing development and subdivided Plat E into six lots. All American eventually built a house on each lot and sold all six houses on Plat E to individual homeowners, who also received and recorded deeds for their properties. The individual homeowners continuously resided in their homes on Plat E through May 2002.

11. In January 1995, A&H sold Plats G and H of the Property to All American, and All American received and recorded two deeds for Plats G and H. As relevant to this action, All American then built infrastructure for a residential housing development and subdivided Plats G and H into six lots. All American eventually built a house on each lot and sold all six houses on Plats G and H to individual homeowners, who also received and recorded deeds for their properties. The individual homeowners continuously resided in their homes on Plats G and H through May 2002.

12. Young claims that he did not learn that houses had been built on Plats E, G, and H of the Property until 2000. Young claims that he owns Plats E, G,

and H by virtue of his transaction with Scott in 1979 and the recording of his Notice of Interest in 1980.

13. In early August 2000, Young retained the Bertch Defendants to represent him, and Young claims that he instructed the Bertch Defendants to immediately file a lawsuit on his behalf to protect his interest in the Property. Although the Bertch Defendants subsequently drafted a complaint for Young to review, the Bertch Defendants never filed any type of legal action on behalf of Young, and they withdrew as counsel for Young in February 2001.

14. In late February 2001, Young retained the Duval Defendants to represent him. Fourteen months later, in May 2002, the Duval Defendants filed a quiet title action in a Utah state court against the individuals who were living in the homes that were built by All American on Plats E, G, and H of the Property. As recognized by the state court, the only cause of action asserted by Young in the state court case was a "claim of quiet title by equitable conversion," R., Doc. 75, Ex. D at 10,[2] and Young never claimed that he held legal title to Plats E, G, and H of the Property.

15. On January 20, 2004, the state court entered an order granting summary judgment in favor of the Plat E homeowners based on their defense of adverse possession under color of title. Without examining the time that All

---

[2]    Documents from the district court record are cited herein by referring to the docket number on the civil docket on Pacer.

American had adversely possessed Plat E, the state court concluded that each of the individual Plat E homeowners had obtained title to their lots under Utah law by adversely possessing their lots under color of title and by paying all assessed real property taxes for seven years before the quiet title action was filed in May 2002. In reaching this conclusion, the state court treated "each homeowner, and his or her claim to the property, separately because, according to [a Utah] statute, 'when the property so included consists of a tract[] divided into lots, the possession of one lot is not deemed a possession of any other lot of the same tract.'" *Id.* at 11 (quoting Utah Code Ann. § 78-12-8 (2003)).

16. Subsequently, on May 17, 2005, the state court entered an order granting summary judgment in favor of the Plat G and Plat H homeowners. In this order, the state court did examine the time that All American had adversely possessed Plats G and H. In addition, the state court went beyond the question of adverse possession and also addressed the issue of whether Young ever had an ownership interest in the Property. The court's findings and conclusions of law were as follows:

> 1. There are no genuine issues of material fact that relate to the Motions for Summary Judgment [regarding Plats G and H]. . . .

> 2. The Complaint was filed on May 31, 2002. Accordingly, the relevant seven year time period [under Utah law] for adverse possession began [at the latest] on May 31, 1995.

> . . . .

[3].  The real property included within Plat G and Plat H ("Property") was conveyed to All American pursuant to two Warranty Deeds recorded in Utah County on January 3, 1995.

[4].  All American has paid all real property taxes on the Property since January 3, 1995 until it conveyed the Lots to the individual Homeowners on the dates set forth in their respective Warranty Deeds.  Thereafter, the individual Homeowners paid all real property taxes on the Property.

[5].  Beginning in January 1995, All American began installing sewer, water and storm drain lines, building and paving roadways, grading the land, and installing curb and gutters on the Property.

. . . .

[6].  All American and the Homeowners have openly, notoriously, and hostilely possessed the Property since January 1995.

[7].  Consequently, Plaintiff's claim is barred by the doctrine of adverse possession set forth in Utah Code Ann. § 78-12-5 through § 78-12-12.

[8].  Additionally, Plaintiff's claim is properly characterized as a breach of contract claim, not a quiet title claim, because Scott Construction never held title to the Property and therefore could not have conveyed equitable or legal title to the Property to Plaintiff pursuant to the Real Estate Purchase Contract.

[9].  Consequently, Plaintiff's claim is also barred by the six-year statute of limitations for breach of contract claims . . . .

[10].  As Plaintiff's claim is barred by the doctrine of adverse possession and the six-year statute of limitations, Plaintiff does not have any right, title or interest in the Property or the Lots pursuant to the Notice of Interest recorded on December 23, 1980 or otherwise.

R., Doc. 88, Ex. 9 at 2-4.

17. In August 2007, Young filed a legal malpractice case against the Bertch and Duval Defendants in the District of Utah pursuant to the district court's diversity of citizenship jurisdiction. With regard to the Bertch Defendants, Young claimed the Bertch Defendants were negligent in failing to protect his interest in Plat E because they "had a complaint drafted on September 25, 2000, . . . [and] [h]ad that complaint been filed on or about that day, the adverse possession date would be dated back to September 25, 1993 [and] Plaintiff would not have lost the lots in Plat E." R., Doc. 60 at 4. With regard to the Duval Defendants, Young claimed that the Duval Defendants were negligent in failing to protect his interest in Plats G and H because "[t]he Duval Defendants failed to file the [quiet title action] in a timely fashion to stop adverse possession . . . [and] failed to provide the [state court with] information and argument crucial to Plaintiff's claims." *Id.* at 5. In addition, Young claimed the Duval Defendants were negligent because they "attempted to present additional evidence, which Plaintiff felt should have been presented in his original response to the Motion for Summary Judgment [regarding Plats G and H], in a Motion to Reconsider[,] [but] [t]he trial court refused to consider the evidence because it was not raised in response to the original Motion for Summary Judgment." *Id.* at 6.

18. Both the Bertch and the Duval Defendants filed motions for summary judgment on Young's legal malpractice claims. After receiving extensive briefing and conducting oral argument, the district court entered a lengthy and

-8-

well-reasoned memorandum decision and order granting both motions, concluding that Young had failed to put forth sufficient evidence to prove that the alleged negligence of either the Bertch or the Duval Defendants was the proximate cause of his losing the Property in the state court quiet title action.

19.  With regard to the Bertch Defendants' motion for summary judgment, the district court began its analysis by noting that "Plaintiff . . . argues that the Bertch Defendants were the cause of him losing his interest in [Plat E of] the Property to adverse possession because they failed to file a complaint prior to the termination of the seven-year period of possession by the adverse possessors."[3] R., Doc. 114 at 9.  The court then noted that, "[u]nder Utah Law, 'one who claims property by adverse possession must show that his use and possession of the property has been actual, open and notorious, and continuous for the statutory period [of seven years], and must have paid all taxes levied on the property during the statutory period.'"  *Id.* (quoting *Allred ex rel. Jensen v. Allred*, 182 P.3d 337, 342 (Utah 2008)).  The court also noted that adverse possession is established under Utah law "when the current possessor 'and the party's

_____

[3]     Although the district court also assumed that Young had asserted a malpractice claim against the Bertch Defendants regarding Plats G and H of the Property, *see* R., Doc. 114 at 11-12, we agree with the Bertch Defendants that Young has abandoned any such claim in this appeal, *see* Bertch Defendants' Response Brief at 2.  As a result, with regard to Young's malpractice claim against the Bertch Defendants, we will confine our analysis to Plat E of the Property.

predecessors and grantors' have been in possession and paid all taxes levied on the property continuously for seven years. So long as there is privity between two successive adverse possessors, the periods of possession . . . may be combined to meet the statutory period." *Id.* at 9-10 (quoting Utah Code Ann. § 78B-2-214 and citing *Home Owners' Loan Corp. v. Dudley*, 141 P.2d 160, 168 (Utah 1943)).

20. Applying these principles, and looking at the evidence that was developed by the Bertch Defendants in the malpractice case pertaining to All American's development work on Plat E, the district court concluded that it was undisputed that the seven-year period for adverse possession of the Plat E lots had expired before Young retained the Bertch Defendants in early August 2000. As the court explained:

> The evidence shows that All American purchased the Plat E lots from A&H in February 1993, and began developing the property shortly after receiving approval from the City of Pleasant Grove to begin cutting roads and installing water and sewer pipes. Such development constitutes actual possession of the Plat E Lots and is sufficiently inconsistent with the rights of a reasonably prudent owner that it constitutes open and notorious possession. While the exact date that development commenced is unknown, photographic evidence clearly shows that it was well underway by July 25, 1993. Plaintiff introduces evidence of other work and other permits being conducted after July 25, 1993, but this evidence does not controvert the photographic evidence which shows that All American's possession was actual, open and notorious at some point prior to July 25, 1993.
>
>        . . . .

-10-

All American sold the property to the individual homeowners at various times, but the sale of the Plat E Lots establishes privity between All American and the homeowners, allowing the periods of possession to be combined. Therefore, the statutory period for adverse possession on the Plat E Lots was fulfilled by July 25, 2000, and there was nothing the Bertch Defendants could have done in early August 2000, to avoid the loss of the Plat E Lots suffered by Plaintiff. Plaintiff, therefore, cannot prove proximate causation and the Bertch Defendants are entitled to summary judgment on Plaintiff's claims related to the Plat E Lots.

*Id.* at 10-11; *see also id.* at 5 (finding that "All American and subsequent purchasers of the Plat E Lots paid property taxes on the Property"). As set forth below, we agree with the district court's reasoning regarding Plat E and therefore affirm the entry of summary judgment in favor of the Bertch Defendants for substantially the same reasons relied on by the district court.

21. With regard to the Duval Defendants' motion for summary judgment regarding Plats G and H,[4] the district court's analysis was primarily focused on whether Young had put forth sufficient evidence to show that he would have successfully defeated the state court motion for summary judgment if the Duval

---

[4] We note that the district court also assumed that Young had asserted a malpractice claim against the Duval Defendants regarding Plat E. *See* R., Doc. 114 at 12. Although we will confine our analysis of the claims asserted against the Duval Defendants to Plats G and H, we agree with the district court that the Duval Defendants were entitled to summary judgment on any claims regarding the Plat E lots for the same reason that the Bertch Defendants were entitled to summary judgment regarding Plat E. Simply put, as the district court explained, "[b]ecause the Plat E lots were lost to Plaintiff by July 25, 2000, there was nothing that the Duval Defendants could have done to protect any interest owned by Plaintiff in those lots after the Duval Defendants' representation of Plaintiff began in [February] 2001." *Id.*

Defendants had not been negligent in failing to submit certain evidence regarding the ownership issue to the state court.[5] The district court concluded that the evidence identified by Young would not have resulted in a defeat of summary judgment on the ownership issue. *Id.* at 14-16. As explained below, we agree with the district court's conclusion, although our reasoning is somewhat different.

22. Finally, as the district court pointed out, Young spent "a good deal of time arguing [before the district court] that he had title [to the Property under the doctrine] of equitable conversion." *Id.* at 15. But as noted above, the state court unequivocally rejected Young's claim that he held equitable title to the Property. *See* R., Doc. 88, Ex. 9 at 3-4. As the state court explained after hearing extensive oral arguments from the Duval Defendants and counsel for the homeowners, "Scott never had title or acquired title and could not thereafter convey equitable title [to Young]. [Young's] rights against Scott were limited to contract[,] fraud and the like and could not include . . . quiet title [based on] an equitable title interest when that did not exist." Aplees. First Supp. App. at 373. In this legal malpractice case, the question is not whether the state court incorrectly decided

---

5       Although Young also argued before the district court that the Duval Defendants were negligent in the quiet tile action because they failed to submit evidence concerning the adverse possession issues, the main evidence identified by Young was tax records for the Property and Young failed to provide any of the alleged tax records to the district court. *See* R., Doc. 114 at 14. As a result, "the [district court could not] conclude that the state court would have denied summary judgment on the issue of adverse possession if the [tax records] had been timely submitted by the Duval Defendants." *Id.*

-12-

the equitable conversion issues, but is instead whether Young has adequately shown that the Duval Defendants negligently handled the equitable conversion issues in the state case. As set forth below, we conclude that he has not.

## II.

Before proceeding with our analysis, we note that, although Young was represented by counsel in the district court proceedings, he filed his opening brief on appeal pro se. The Duval and the Bertch Defendants then filed separate response briefs addressing the related but distinct legal malpractice claims that Young has asserted against them. In connection with this initial briefing, a two-volume district court record was submitted as the record on appeal.

After receiving the parties' initial briefs, this court entered an order directing the Duval Defendants to: (1) supplement the record with all the briefs and supporting exhibits that were filed by the Duval Defendants on behalf of Young in opposition to the motions for summary judgment that were filed by the defendants in Case No. 020402269 PR in the Fourth Judicial District Court, Utah County, State of Utah; and (2) file a supplemental brief addressing certain matters related to the state-court case. After the Duval Defendants filed their supplemental brief and a supplemental appendix, an attorney entered his appearance to represent Young in this appeal and filed a supplemental response brief on behalf of Young. The court then entered an order directing the Duval Defendants to file a reply to Young's supplemental response brief. The Duval

-13-

Defendants subsequently filed a second supplemental brief and a second supplemental appendix.

## III.

### A. Standard of Review.

"We review the grant of summary judgment de novo, applying the same standard as the district court . . . .." *Gwinn v. Awmiller*, 354 F.3d 1211, 1215 (10th Cir. 2004). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In applying this standard, we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006) (quotation omitted).

### B. Legal Malpractice Claims Under Utah Law.

In a legal malpractice case brought under Utah law, a plaintiff must prove: "(i) an attorney-client relationship; (ii) a duty of the attorney to the client arising from their relationship; (iii) a breach of that duty; (iv) a causal connection between the breach of duty and the resulting injury to the client; and (v) actual damages." *Christensen & Jensen, P.C. v. Barrett & Daines*, 194 P.3d 931, 938 (Utah 2008) (quotation omitted). As noted above, both the Bertch Defendants and the Duval Defendants based their summary judgment motions on Young's inability to prove proximate causation. In order to prove proximate causation in a

-14-

legal malpractice case brought under Utah law, the client must "show that if the attorney had adhered to the ordinary standards of professional competence and had done the act he failed to do or not done the act complained about, the client would have benefited." *Id.* (quotation omitted). As Young has conceded, this means that Young "must demonstrate that, but for the negligence of the [Bertch and] Duval Defendants, he would have prevailed on his claims of ownership to the property he lost in the state court litigation." R., Doc. 102 at 2.

**C. Young's Claims Against the Bertch Defendants.**

As set forth above, the district court found that "photographic evidence" clearly showed that development work was well under way on the Plat E lots by July 25, 1993, and, applying Utah law, the court concluded that "[s]uch development constitutes actual possession of the Plat E Lots and is sufficiently inconsistent with the rights of a reasonably prudent owner that it constitutes open and notorious possession."[6] R., Doc. 114 at 10. As a result, combining the continuous possession periods of All American and the individual homeowners of the Plat E lots, the court found that "the statutory period [under Utah law] for adverse possession on the Plat E Lots was fulfilled by July 25, 2000, and there was nothing the Bertch Defendants could have done in early August 2000, to

---

[6]     We also note that it was undisputed that All American and the individual homeowners had paid all of the real property taxes levied against the Plat E lots between July 1993 and July 2000.

avoid the loss of the Plat E Lots suffered by Plaintiff." *Id.* at 11. Having considered the matter de novo, and having reviewed the photographic evidence and the supporting witness statements concerning the Plat E lots that the Bertch Defendants submitted to the district court, *id.*, Docs. 76 (Heslop Affidavit) and 77 (Swenson Declaration), we agree with the district court's analysis and affirm the entry of summary judgment in favor of the Bertch Defendants for substantially the same reasons relied on by the district court.

We also conclude that Young's claims against the Bertch Defendants fail for three additional reasons. First, in his pro se opening brief, Young advanced several factual challenges to the photographic evidence of the Plat E lots as of July 25, 1993. *See* Aplt. Opening Brief at 2-3. None of these factual challenges were asserted in the summary judgment proceedings before the district court, however, and we generally do not consider matters that are raised for the first time on appeal. *See Tele-Communications, Inc. v. Commissioner*, 12 F.3d 1005, 1007 (10th Cir. 1993) ("The general rule is that an appellate court will not consider an issue raised for the first time on appeal."). We see no reason to depart from the general rule here.

Second, in the "Undisputed Facts" section in the memorandum that they submitted to the district court in support of their motion for summary judgment, the Bertch Defendants alleged, based on the photographs attached to the Affidavit of Jennifer Heslop and the statements in the Declaration of Reed Swenson, that it

-16-

was undisputed that "[by] July 25, 1993, . . . substantial earthwork had been done across the Plat E Lots. Specifically, roads had been staked and cut through Lots 13, 14, 15, and 16 and the land ha[d] been prepared for the pouring of sidewalks." R., Doc. 75 at 5-6 (citing Exhibit A to the Heslop Affidavit (Doc. 76) and ¶ 8 of the Swenson Declaration (Doc. 77)). In his response to the Bertch Defendants' motion for summary judgment, however, Young failed to challenge, and in fact completely ignored, the Bertch Defendants' assertions concerning what the photographic evidence showed regarding the Plat E lots as of July 25, 1993. *Id.*, Doc. 86 at 2-7. Given the critical importance of the photographic evidence to the adverse possession issues relating to Plat E, this failure of proof was fatal to Young's malpractice claim against the Bertch Defendants. *See* DUCivR 56-1(c) ("All material facts of record . . . that are set forth with particularity in the statement of the movant will be deemed admitted for the purpose of summary judgment, unless specifically controverted by the statement of the opposing party . . . .").

Finally, as the state court pointed out when it ruled on the adverse possession issues pertaining to Plat E, the Utah statute governing adverse possession under a written instrument provides that "[i]f the property consists of a tract divided into lots, the possession of one lot is not considered a possession of

-17-

any other lot in the same tract." Utah Code Ann. § 78B-2-210(2).[7] Young argues that this language precluded the district court from combining the time that All American possessed the Plat E lots with the time that the individual homeowners possessed their individual Plat E lots, but Young is wrong because the plain language of § 78B-2-210(2) indicates that it only prohibited the district court from combining the possession time of the individual homeowners of the Plat E lots, which is something the district court did not do.

As the district court correctly recognized, adverse possession is established under Utah law "when the current possessor 'and the party's predecessors and grantors' have been in possession and paid all taxes levied on the property continuously for seven years. So long as there is privity between two successive adverse possessors, the periods of possession . . . may be combined to meet the statutory period." R., Doc. 114 at 9-10 (quoting Utah Code Ann. § 78B-2-214 and citing *Dudley*, 141 P.2d at 168). Accordingly, because there was privity between All American and the individual Plat E homeowners, the district court did not err in combining their periods of possession.[8]

---

[7] We note that, prior to February 7, 2008, virtually identical language was set forth in Utah Code Ann. § 78-12-8, which is the statue the state court applied.

[8] As further support for this conclusion, we note that, as set forth above, the state court combined the periods of possession of All American and the individual homeowners of the lots in Plats G and H when it adjudicated the adverse possession issues pertaining to those plats.

**D.  Young's Claims Against the Duval Defendants.**

In his response to the Duval Defendants' motion for summary judgment, Young argued that the Duval Defendants committed malpractice by failing to submit sufficient evidence to the state court in the quiet title action to raise a genuine issue of material fact concerning whether he had an ownership interest in Plats G and H of the Property that was superior to the interests of the individual homeowners on those plats.  Although Young also argued that the Duval Defendants committed malpractice with regard to the adverse possession issues concerning Plats G and H by waiting fourteen months before filing the quiet title action, we do not need to address that aspect of Young's malpractice claim against the Duval Defendants because, like the district court, we have determined that Young's malpractice claim falls short on the ownership issue.

As set forth above, Young asserted in his complaint that "[t]he Duval Defendants failed to provide the [state court with] information and argument crucial to [his] claims."  R., Doc. 60 at 5.  In his summary judgment response, Young elaborated on the specific evidence that he believes supports this claim, making the following allegations regarding the alleged malfeasance of the Duval Defendants in handling the ownership issue in the quiet title action:

> Plaintiff provided the Duval Defendants with the identities of all witnesses to the Notice of Interest transaction.  Plaintiff also located and provided the Duval Defendants copies of all filed and unfiled contracts.  Plaintiff paid for a complete title search by Title West and provided the results to the Duval Defendants, along with

copies of all documents found by the search . . . . Plaintiff retained two expert title attorneys who would testify that the Notice of Interest was valid and outstanding. Plaintiff found all the witnesses to the original sale of the Properties to Scott Construction and the Duval Defendants obtained their affidavits and/or depositions. These include Messrs. Scott, Cannon, McKean and Hansen of A&H Investment.

The title company and all of the witnesses except Mr. Hansen confirmed that A&H did not foreclose on the property. However, Mr. Hansen testified that he received in excess of $700,000, from Scott Construction and Mr. Scott testified that was payment in full under his contract [with A&H]. . . . Mr. Scott testified that he had to own the land in full before the bank would make a development loan, so he paid for the Properties in full. . . .

The Duval Defendants told Plaintiff that the state court judge did not grant pretrial motions and they chose not to reveal to the court all the facts of which they were aware. . . . They did not make use of the evidence and witness statements to respond to the [homeowners'] motion for summary judgment. . . .

When the [state] court granted the motion for summary judgment, the Duval Defendants filed a "Memorandum in Support of Motion to Amend Order" raising factual issues not raised in their original response to the motion, even though they were in possession of the information at the time of their original response. . . . The court denied the motion, finding that Plaintiff had failed to controvert facts in a timely manner. . . .

. . . .

Whether Scott Construction breached any contract with A&H Investment . . . is a disputed issue of fact. The fact that the Duval Defendants did not present the state court with the evidence that there was no breach and Scott Construction paid its obligations in full is an example of their malpractice. . . . [T]he Duval Defendants [also] should have contested the legal effect of the purported Wendell Hansen Affidavit by providing the state court with his contradictory deposition testimony. Had they done so, it would likely have changed the outcome of the state case.

-20-

. . . .

> The Duval Defendants next point out that the state court held that Plaintiff's claim was a contract claim against Scott Construction and that Scott Construction never held title to the property and could not convey it to Plaintiff. This merely highlights the importance of all the evidence that Scott Construction did in fact have title, evidence the Duval Defendants chose to withhold from the court.

R., Doc. 102 at xvi-xvii, 3-4; *see also id.*, Doc. 103 at 7-8 (supporting Affidavit of David Young describing "the evidence and witness statements" that the Duval Defendants "did not make use of . . . to respond to the motion for summary judgment").

Unfortunately for Young, none of these arguments has any merit. To begin with, as we learned from the Duval Defendants' first supplemental brief and supplemental appendix, the Duval Defendants did in fact submit the Affidavits of Wynne (Buck) Scott, Richard McKean, and Joseph Cannon and the deposition testimony of Wendell Hansen to the state court in opposition to the homeowners' motion for summary judgment regarding Plats G and H.[9] *See* Aplees. First Supp.

---

[9] We note that Young's prior counsel also submitted an Affidavit dated July 14, 2004, from Kent Coles to the district court, and it appears that the Coles Affidavit was never submitted to the state court in the quiet title action. However, the Coles Affidavit was submitted to the district court as part of Young's motion to reconsider under Fed. R. Civ. P. 59(e). *See* R., Doc. 118, Ex. D. As a result, the Coles Affidavit is not properly before us since Young's prior counsel failed to show that the Coles Affidavit constituted "new evidence previously unavailable," as required to obtain relief based on new evidence under Rule 59(e). *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). We also note that Young is not appealing the district court's denial of his

(continued...)

-21-

App. at 131-36, 159-62.  As a result, the state court was in fact presented with the evidence that raised a factual dispute concerning whether Scott Construction breached its contract with A&H when the court adjudicated the ownership issue, but the court obviously determined that the evidence did not raise a factual dispute that was capable of defeating summary judgment on the ownership issue. Consequently, regardless of whether the state court reached the right result on the ownership issue, the Duval Defendants did not commit malpractice by failing to submit to the state court "Hansen['s testimony] that he received in excess of $700,000 from Scott Construction and [] Scott['s testimony] that [he paid] in full under his contract [with A&H]," R., Doc. 102 at xvi, as that evidence was in fact submitted to the state court, *see* Aplees. First Supp. App. at 131-32, 161 (page 23).

Turning to Young's claim that he "retained two expert title attorneys who would testify that the Notice of Interest was valid and outstanding," R., Doc. 102 at xvi, that claim also rings hollow because Young never submitted any actual testimony from either of the alleged attorneys to the district court.  Young thus failed to make a competent evidentiary showing that the two attorneys would in fact testify that the Notice of Interest was "valid and outstanding." *Id.*  Further, Young has made no effort to explain what he means by "valid and outstanding,"

---

[9](...continued)
Rule 59(e) motion.

-22-

and this evidence would have been too vague to defeat summary judgment on the ownership issue in any event.

Next, with regard to Young's claim that he "paid for a complete title search by Title West and provided the results to the Duval Defendants," *id.*, the only evidence that Young submitted to the district court relating to Title West is an Affidavit dated April 26, 2005, from Glen Roberts, Vice President of Title West Title Company. Mr. Roberts' Affidavit states as follows:

> 1. . . . Title West performed a title search on the real property described in the Notice of Interest recorded by David Young on December 23, 1980 . . . .
>
> 2. The 1982 affidavit of Wendell Hansen appears in the chain of title of the property described in the Notice of Interest.
>
> 3. The 1982 affidavit of Wendell Hansen was not shown as an exception to the title report because it did not create an encumbrance or interest in the property.
>
> 4. David Young's Notice of Interest was determined to be an exception to title and appears in the title report.

R., Doc. 103, Ex. N, Ex. 10. Mr. Roberts' Affidavit is noteworthy for what it does *not* say, and that is that Young's Notice of Interest *created an encumbrance or interest in the Property*. Given this obvious limitation, we cannot say that Mr. Roberts' Affidavit created a genuine issue of material fact concerning whether the state court would have reached a different result on the ownership issue if the Duval Defendants had submitted the affidavit in opposition to the homeowners' motion for summary judgment.

-23-

Mr. Roberts' Affidavit is also relevant to Young's claim that the Duval Defendants were negligent because: (1) they failed to submit additional evidence to the state court until they filed a motion to amend the court's summary judgment order regarding Plats G and H; and (2) it was too late under state law to submit new evidence at that point, so the state court rejected the evidence out of hand. Importantly, it turns out that Mr. Roberts' Affidavit is the only "new" evidence related to the ownership issue that the Duval Defendants submitted to the state court in connection with the motion to amend. *See* R., Doc. 103, Ex. N, Exs. 1-10. As a result, Young's claim that the motion to amend was supported by new evidence that would have changed the state-court result on the ownership issue if the state court had considered the evidence is without merit.

Two final matters remain for our consideration. First, the new evidence referred to in Young's supplemental response brief. And second, the doctrine of equitable conversion.

With regard to the first matter, as noted above, after the Duval Defendants filed their first supplemental brief and supplemental appendix, an attorney entered his appearance to represent Young and filed a supplemental response brief on behalf of Young. In the brief, Young's new counsel asserted that the Duval Defendants were negligent in the quiet title action because "they failed to use any of the vital evidence [that Young] provided to them." Aplt. Supp. Resp. Br. at 1. As counsel explained:

-24-

In the Duval Defendants['] Supplemental Brief, they state the following: "All five documents set forth in paragraphs 1-4 above, which are all the documents evidencing Young's equitable interest in the property were timely submitted to the [state] court as exhibits. . ." (See page 2 of Duval Defendants['] Supplemental Brief). This statement is not true. There are far more than five documents evidencing Young's equitable interest in the property. In fact there are twenty-one additional different sources of evidence including affidavits, depositions, and expert witnesses all of which prove Young's equitable interest in the property. These crucial and important sources of evidence were all given to the Duval Defendants by Young and were purposefully over looked by them.

*Id.* Mr. Young's new counsel then proceeded to describe the twenty-one additional sources of evidence in detail. *Id.* at 2-6.

As the Duval Defendants have pointed out in their second supplemental brief, however, "of the 21 'fact' paragraphs proffered by Young['s new counsel], 18 of those 'fact' paragraphs refer to evidence that was not submitted to the [district] court and therefore is not admissible here." Aplees. Second Supp. Br. at 3. Specifically, the paragraphs in Young's supplemental response brief that refer to evidence that was not submitted to the district court are Paragraphs 1-10, 12, and 15-21, *see* Aplt. Supp. Resp. Br. at 2-6, and we will not consider this evidence because it is not properly part of the record on appeal. *See Utah v. U.S. Dep't of Interior*, 535 F.3d 1184, 1196 n.7 (10th Cir. 2008) ("[N]ew evidence not submitted to the district court is not properly part of the record on appeal."). Further, Paragraph 11 refers to Glen Roberts' Affidavit, which we have already discussed; Paragraph 13 refers to a proposed assumption agreement regarding the

-25-

contract between Young and Scott that was in fact submitted by the Duval

Defendants to the state court in opposition to the homeowners' motion for

summary judgment, *see* Aplees. First Supp. App. at 120, 138-39; and Paragraph

14 refers to the Affidavits of Scott, McKean, and Cannon, which we have already

discussed.[10]  In addition, Paragraph 14 improperly refers to deposition testimony

that is not part of the record on appeal because Young failed to submit the

testimony to the district court.  In sum, Young's new counsel has utterly failed to

point this court to any competent evidence supporting Young's claim that the

Duval Defendants were negligent in handling the ownership issue.

Lastly, with regard to the doctrine of equitable conversion,[11] as the Duval

Defendants have pointed out in their first supplemental brief:

> The Duval Defendants argued the real property interest and equitable
> title claims of Mr. Young repeatedly [in the quiet title action],
> beginning in the [state court] complaint, then in a Rule 56(f) motion

---

[10]    Paragraph 14 also refers to the Affidavit of Kent Coles, which we discussed above in footnote eight.

[11]    The Utah Supreme Court has described the doctrine of equitable conversion as follows:

> Under the doctrine of equitable conversion, a vendee under [an
> installment land sale contract] obtains an equitable interest in the
> land itself, even though the vendor retains the legal title.  The vendee
> is said to convert the monetary interest that he has in the property to
> an interest in real estate so that he may invoke the powers of an
> equity court to compel specific performance of the real estate
> contract [in case of a default by the vendor]."

*Butler v. Wilkinson*, 740 P.2d 1244, 1255 n.5 (Utah 1987).

for a continuance, then in the reply on the 56(f) motion, then in the main [summary judgment] opposition brief, then in a supplemental filing, and in a further opposition memorandum, and finally at oral argument."

Aplees. First Supp. Br. at 4-5 (citations to Aplees. First Supp. App. omitted).

Moreover, while Young's prior counsel attempted to relitigate the equitable conversion issues in the district court as part of Young's opposition to the Duval Defendants' motion for summary judgment, *see* R., Doc. 102 at 2-3, Young's prior counsel never articulated or asserted a legal malpractice claim based on any acts or omissions of the Duval Defendants relating to how they argued the equitable conversion issues in the quiet title action. Likewise, neither Young in his pro se opening brief nor his new counsel in Young's supplemental response brief have articulated a legal malpractice claim related to how the Duval Defendants argued the doctrine of equitable conversion in the state court action. In fact, the doctrine is not even mentioned in any of Young's appellate filings, and it has therefore been waived. *Cf. Porro v. Barnes*, 624 F.3d 1322, 1329 n.2 (10th Cir. 2010) ("[O]f course, arguments not clearly made in an opening brief are deemed waived.").

The judgment of the district court is **AFFIRMED**. The Duval Defendants' request for an award of appellate costs and attorney's fees is **DENIED**.

Entered for the Court

Mary Beck Briscoe
Chief Judge

-27-